In the Matter of WILLIAM ST. JOHN, Respondent. WESTCHESTER COUNTY BAR ASSOCIATION, Petitioner.

Second Department, January 2, 1974.

*Alfred D. Fredericks* for petitioner.

*William St. John,* respondent in person.

*Per Curiam.* The respondent was admitted to the Bar on March 28, 1951, at a term of the Appellate Division of the Supreme Court in the Second Judicial Department. He was charged with professional misconduct in two specifications (hereinafter referred to as Specifications A and B) as set forth in paragraph " Sixth " of the petition. By order of this court dated June 21, 1973 the issues were referred to Honorable ANTHONY J. CERRATO, a Justice of the Supreme Court, to hear and to report, with his findings upon each of the issues.

In Specification " A " it was charged that the respondent's fees for legal services to a client had been excessive and unreasonable, contrary to and in violation of EC 2–17 and subdivisions (A) and (B) of DR 2–106 of the Code of Professional Responsibility. In Specification " B " it was charged that, contrary to and in violation of subdivision (B) of DR 9–102 of the Code of Professional Responsibility (pars. [3], [4]), the respondent had failed to promptly pay a client funds which the client was entitled to receive and had failed to properly supervise and control funds in his special bank account for the benefit of clients.

At the hearing before Mr. Justice CERRATO held on July 18, 1973, it was adduced, *inter alia,* that the respondent had been retained by a widow to settle the estate of her husband, who had died of gunshot wounds. The fee agreed upon and paid to the respondent was $1,500. He thereafter processed the widow's claim for accidental death benefits on a $100,000 insurance policy. In doing so he completed an application to the insurance company, engaged in telephone conversations and correspondence with a representative of the insurance company and had conferences with the widow and with the representative. These conferences included an oral examination of his client at his office by the insurance company representative, which lasted about one hour and fifteen minutes. According to the testimony of the representative, in addition to the oral examination and some correspondence, he had three telephone conversations with the respondent, which consumed approximately 15 to 20 minutes. The respondent estimated that, in all, he had expended about 20 hours in the matter.

When the insurance company's check for $100,000 payable to the order of the widow was received by the respondent, he had her endorse it over to him and issued two postdated checks; one

to her order in the sum of $66,650 and one to his order in the sum of $33,350, which he claimed to be his fee in accordance with the minimum fee schedule of the Westchester County Bar Association in collection matters, to wit: one half of the first $100 collected and one third of any amount collected in excess of the first $100. The widow subsequently retained counsel who unsuccessfully sought a refund from the respondent. Thereafter, counsel ascertained from the respondent's bank that there were insufficient funds to pay the $66,650 check. He so informed the respondent, who proceeded to make arrangements to cover the shortage ($1,650). However, when counsel presented the check for certification the amount was still short. Approximately one and a half hours later, following a visit by counsel to the respondent's office, the shortage was covered and the check was certified. The respondent attributed the shortage to some bookkeeping miscalculation on the part of his secretary, who had been given a power of attorney to issue checks on his trust account.

Following the hearing, Mr. Justice CERRATO rendered his report, dated July 24, 1973, in which he found that the charges had been sustained. With respect to Specification "B", he noted that, while the explanation offered by the respondent shows that he was probably careless in handling the trust account, there does not appear to be any willful attempt on his part to deprive the client of funds due to her. Accordingly, he gave the respondent the benefit of the doubt with respect to the shortage in his account, but found that there was an actual if not willful violation of paragraphs (3) and (4) of subdivision (B) of DR 9–102. As for Specification "A", he found that there was a violation of EC 2–17 and subdivisions (A) and (B) of DR 2–106. In doing so, he stated that the charge made by the respondent for his services in connection with the processing of the $100,000 insurance claim was excessive and not justified by the time spent or the gravity of the matter or any unusual difficulties encountered.

The petitioner now moves to confirm the report, but requests a modification of the portion of the findings which indicates that there was only one presentation of the check for certification. The petitioner also moves for such further action by this court with respect to the respondent as may be just and proper and as is contemplated by law.

We agree with the foregoing findings with respect to Specification "A". In doing so, we reject, as did the reporting Justice, the respondent's contention that when he was retained he

apprised his client of the percentage fee and that she agreed to it. We also reject his contention, urged in opposition to the motion, that the legend written on the face of each of the checks, explaining the basis for the amount thereof, and the client's signature on the back of each check beneath the legend " payment approved " substantiated her agreement to pay the fee. As for Specification " B ", we are of the opinion that the petitioner did not establish that the respondent had failed to maintain a complete record of the moneys of his client and to render an approximate account with respect thereto, in violation of paragraph (3) of subdivision (B) of DR 9–102. However, it was established that the respondent had failed to promptly pay over the moneys which his client was entitled to receive, in violation of paragraph (4) of subdivision (B) of DR 9–102.

Accordingly, we confirm the findings with respect to the violations of EC 2–17, of subdivisions (A) and (B) of DR 2–106 and of paragraph (4) of subdivision (B) of DR 9–102 and disaffirm the finding as to the violation of paragraph (3) of subdivision (B) of DR 9–102.

As for the modification sought by the petitioner, we do not fault the factual sufficiency of the report; nor do we consider the report inconsistent with the factual version herein set forth with respect to the incidents of certification. The motion to confirm should therefore be granted, except that the requested modification should be denied.

In considering the measure of discipline to be imposed, we are primarily concerned with the violation of the ethical consideration and the disciplinary rule bearing on the excessiveness of a fee. They provide as follows:

" EC 2–17. The determination of a proper fee requires consideration of the interests of both client and lawyers. A lawyer should not charge more than a reasonable fee, for excessive cost of legal service would deter laymen from utilizing the legal system in protection of their rights. Furthermore, an excessive charge abuses the professional relationship between lawyer and client. On the other hand, adequate compensation is necessary in order to enable the lawyer to serve his client effectively and to preserve the integrity and independence of the profession."

" DR 2–106. Fees for Legal Services

" (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.

Factors to be considered as guides in determining the reasonableness of a fee include the following:

" (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

" (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

" (3) The fee customarily charged in the locality for similar legal services.

" (4) The amount involved and the results obtained.

" (5) The time limitations imposed by the client or by the circumstances.

" (6) The nature and length of the professional relationship with the client.

" (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

" (8) Whether the fee is fixed or contingent."

In our opinion, the facts and circumstances adduced at bar reflect a disregard by the respondent of the foregoing standards and guidelines. We reject his premise for treating the claim as a collection matter within the purview of the minimum fee schedule of the Westchester County Bar Association and view it as a subterfuge for reaching an unconscionable result. In our opinion, the unreasonableness of the respondent's fee and the circumstances under which it was imposed and obtained are indicative of a lack of consideration of the client's interests and an abuse of the respondent's professional relationship with her, all of which are hardly conducive to preserving the integrity of the legal profession and maintaining mutual respect and confidence between the members of the Bar and the society they serve.

Accordingly, we deem the respondent's suspension from the practice of law for a period of one year, commencing February 1, 1974, to be a just and proper measure of discipline and direct that an order to that effect be made.

RABIN, P. J., MUNDER, MARTUSCELLO, GULOTTA and BRENNAN, JJ., concur.