JOHN H. HARMON v. LEEVESTER PUGH

No. 783SC60

(Filed 7 November 1978)

1. **Attorneys at Law § 7.1— contingent fee contract—scrutiny by court**

Contracts for contingent fees are closely scrutinized by the courts where there is any question as to their reasonableness, irrespective of whether made prior to the commencement of or during the attorney-client relationship.

2. **Attorneys at Law § 7.1— contingent fee contract—reasonableness—scrutiny by court**

Even though a contingent fee contract is found to have been entered into fairly and in good faith and without suppression of fact, it is subject to the scrutiny of the court as to its reasonableness.

3. **Attorneys at Law § 7.1— contingent fee contract—unreasonableness—recovery in quantum meruit**

The trial court did not err in determining that the fee provided for by a contingent fee contract for an attorney's services in collecting the proceeds of a life insurance policy without filing suit was unreasonable and in awarding the attorney an amount in quantum meruit.

APPEAL by plaintiff from *Rouse, Judge*. Judgment entered 16 August 1977 in Superior Court, CRAVEN County. Heard in the Court of Appeals 19 October 1978.

Plaintiff, an attorney, brought this suit seeking to recover approximately $7,400 under a contingent fee contract with defendant. Defendant answered, denying the material allegations.

The court entered the following judgment:

JUDGMENT

THIS CAUSE coming on to be heard and being heard before the Honorable Robert D. Rouse, Jr., Superior Court Judge, duly assigned and commissioned to preside at the August 1, 1977 term of Craven County Civil Superior Court, without a jury by consent and stipulation of the parties, and it appearing to the Court, and the Court FINDING AS A FACT:

1. Defendant's son, William J. Pugh, Jr., died of "natural causes" while serving with the United States Army in Germany on January 4, 1976.

2. At the time of his death, Defendant's son had in effect a life insurance policy with the MANUFACTURER'S LIFE INSURANCE COMPANY of Toronto, Canada. Defendant's son was the named insured in the policy and the defendant, Lee Vester Pugh, was the designated beneficiary. The policy contained certain terms pertinent to the case at bar;

a. The policy provided for the payment of $36,029.00 to the named beneficiary upon the filing of a claim by the beneficiary along with proof that the insured had expired as a result of "natural causes."

b. An additional $36,029.00 would be paid to the beneficiary upon the presentation of a claim by the beneficiary along with proof that insured expired as a result of "accidental causes."

c. The policy further provided an "incontestability clause" to be effective two years from the date of issue of the insurance policy. Claims upon policies filed within the first two years of their coverage remained subject to special investigation previous to disbursement of policy benefits by the insurance company.

3. Defendant notified the MANUFACTURER'S LIFE INSURANCE COMPANY of the death of William J. Pugh, Jr., their insured. Thereafter on April 9, 1976, the insurance company acknowledged defendant's notification and instructed the defendant to complete and forward certain documents in order to collect her claim; to wit, a Proof of Death Claimant's Statement, a Proof of Death Physician's Statement, or alternately, a copy of the insured's Death Certificate, and the insured's Life Insurance Policy for cancellation. As per instructions, Defendant completed and forwarded the necessary documents to the insurance company.

4. In late June, 1976, defendant became concerned about the status of her insurance claim. Upon inquiry, the insurance company explained that since defendant's son had died within the first two years of the coverage of his policy, and the "incontestability clause" had not taken effect, it was

necessary for the company to investigate the circumstances of the insured's death. The investigation was taking longer than is customary because the insurance investigators were having difficulty obtaining the insured's medical records and history. The fact that the insured had expired while in the military, and out of the country, made the investigation difficult.

5. Through mutual acquaintances, defendant informed the plaintiff, John H. Harmon, a duly licensed and practicing attorney in New Bern, N. C., that she had an insurance claim that she wanted to discuss with him. Plaintiff met with the defendant at defendant's residence on the 4th of July, 1976, and conferred with defendant about her claim with the insurance company. The parties did not discuss or negotiate an attorney fee arrangement at this initial conference.

6. On July 7, 1976, plaintiff returned to the residence of the defendant and presented her with two documents for her signature: (1) a medical authorization and (2) a paper entitled "CONTRACT." The contract acknowledged that the defendant was employing the plaintiff to handle an insurance claim with the MANUFACTURER'S LIFE INSURANCE COMPANY; authorized the plaintiff to take actions necessary to collect the policy; and provided for the plaintiff's fee. A contingent fee of 20 percent of any amount collected from the insurance company without the necessity of filing suit was established as plaintiff's fee. Should the claim require filing of a lawsuit, the plaintiff's fee was to be 33⅓ percent of any amount collected from the insurance company. Defendant executed both documents in the presence of plaintiff.

7. Plaintiff's tenure of employment began on July 7, 1976 and ended on July 31, 1976, with the delivery to the defendant of a check drawn on the account of MANUFACTURER'S LIFE INSURANCE COMPANY in the amount of $37,263.87, dated July 22, 1976 and payable to Lee Vester Pugh only. During the course of his employment the plaintiff rendered the following services:

a. Plaintiff made 5 or 6 trips to defendant's residence to discuss defendant's insurance claim. These trips include the intitial interview of July 4, 1976, the fee discussion of July 7, 1976, and the delivery of the check on July 31, 1976.

b. Plaintiff prepared two documents for defendant's signature, (1) a medical authorization to military personnel for procurement of medical records, (2) and the employment contract.

c. Plaintiff wrote two letters to the National Personnel Records in St. Louis, Missouri to obtain the medical history of Defendant's son.

d. Plaintiff wrote three letters to the insurance company in which he forwarded copies of the insured's medical history and autopsy. The autopsy confirmed the fact that the insured had expired from pneumonia.

e. Plaintiff made some fifteen telephone calls to various agencies and parties.

8. Plaintiff delivered the insurance check to the defendant on July 31, 1976, and made demand upon defendant for the payment of his fee in the amount of twenty percent of the money paid by the insurance company or approximately $7,400.00. Defendant refused to pay plaintiff's fee at that time and on subsequent occasions when plaintiff made demand for payment.

9. Plaintiff filed suit in the Craven County Superior Court praying the Court to award judgment against the defendant in the amount of $7,400.00 as compensation for services rendered.

AND UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

1. That the plaintiff and defendant entered into a written contract, which defined the scope, nature, and compensation of plaintiff's employment on July 7, 1976:

2. That the contract was fairly and freely made;

3. That at the time defendant executed the contract, she had full knowledge of the effect of the contract and of all material circumstances relating to the reasonableness of the fee;

4. That the contract was made in good faith, without suppression or reservation of fact;

5. That at the time plaintiff and defendant entered into the contract and employment relationship, defendant had already filed documents required by the insurance company to perfect a claim for insurance benefits predicated upon the death of insured as a result of "natural causes"; that the insurance company had acknowledged defendant's claim, but was exercising an option reserved in the insurance policy, and was investigating the circumstances of its insured's death to determine if there were grounds to "contest or deny" the insurance claim;

6. That the insurance company was having difficulty obtaining medical information needed to determine the status of defendant's claim; that plaintiff provided valuable services to defendant by acquiring medical information required by the insurance company to determine if the claim of defendant was in any way "contestable"; that the medical information and autopsy forwarded to the insurance company stated that the insured had died of pneumonia, and satisfied the investigators that there were no grounds upon which to deny or contest defendant's claim; that upon arriving at the conclusion that defendant's claim was not contestable, the insurance company forwarded payment of the benefits as stated in the insurance policy;

7. That procurance of the medical information and autopsy by the plaintiff and the forwarding of those documents to the insurance investigators were services of a menial class, and did not require the exercise or expenditure of any special skill, diligence, or expertise upon the part of the plaintiff;

8. That since defendant's claim was paid as a result of the performance of a menial task by the plaintiff, and since the insurance company after investigation, never contested defendant's insurance claim, the contingent fee of $7,400.00 demanded by the plaintiff is excessive in proportion to the value of the services actually rendered by the plaintiff; that the contingent fee is so excessive as to be oppressive and unenforceable in this Court;

9. That plaintiff is entitled to compensation as can be ascertained in a quantum meruit; that the services rendered by the plaintiff have a reasonable value of $750.00.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover of the defendant the sum of $750.00 with interest thereon from the 3rd day of August, 1976, together with the costs of this action to be taxed by the clerk.

/s/ ROBERT D. ROUSE, JR.
Hon. Robert D. Rouse, Jr.
Superior Court Judge Presiding

By Stipulation signed out of district and of the term—August 16, 1977.

/s/ ROBERT D. ROUSE, JR.

From the foregoing judgment, plaintiff appealed.

*Chambers, Stein, Ferguson & Becton, by James E. Ferguson II, for the plaintiff.*

*Carter W. Jones and Ralph G. Willey III, for the defendant.*

MARTIN (Robert M.), Judge.

The question presented for review is whether the facts found support the trial judge's legal conclusion that plaintiff's entitlement to compensation must be ascertained in quantum meruit.

Plaintiff did not except to the trial judge's findings of fact or contend by specific assignment of error that the evidence did not

support the findings of the trial judge. The sole assignment of error to the signing of the judgment presents the face of the record proper for review, but is limited to the question of whether error of law appears on the face of the record, which includes whether the facts found or admitted support the judgment, and whether the judgment is regular in form.

[1] Contracts for contingent fees, especially, are closely scrutinized by the courts where there is any question as to their reasonableness, irrespective of whether made prior to the commencement of or during the attorney-client relationship. *Randolph v. Schuyler*, 284 N.C. 496, 201 S.E. 2d 833 (1964). "A contingent fee contract is always subject to the supervision of the courts as to its reasonableness." *Tonn v. Renter*, 6 Wis. 2d 498, 95 N.W. 2d 261 (1958); see, 1 Annot., 13 A.L.R. 3rd 701 (1974).

In *Rock v. Ballou*, 286 N.C. 99, 209 S.E. 2d 476 (1976), Justice Lake, speaking for the Court, states the rule in *Randolph v. Schuyler, supra*, as follows:

"A contract made between an attorney and his client, during the existence of the relationship, concerning the fee to be charged for the attorney's services, will be upheld if, but only if, it is shown to be reasonable and to have been fairly and freely made, with full knowledge by the client of its effect and of all the material circumstances relating to the reasonableness of the fee. The burden of proof is upon the attorney to show the reasonableness and the fairness of the contract, not upon the client to show the contrary."

In the same case, Justice Lake states the rule governing a contract for a contingent fee, whether made during the existence of the attorney-client relationship or *prior* to its inception, as stated in *Casket Co. v. Wheeler*, 182 N.C. 459, 467, 109 S.E. 378, 383 (1921), 19 A.L.R. 391 (1921) as follows:

"A contract for a contingent fee must be made in good faith, without suppression or reserve of fact or of apprehended difficulties; and without undue influence of any sort or degree; and the compensation bargained for must be absolutely just and fair, so that the transaction may be characterized throughout by all good faith to the client."

**[2, 3]** The subject contract, even though found to have been entered into fairly and in good faith and without suppression of fact, is subject under the above cited cases to the scrutiny of the court as to its reasonableness. We hold that the findings of fact support the conclusions of law and the judgment entered. The judgment is regular in form and is

Affirmed.

Judges PARKER and MARTIN (Harry C.) concur.