OPINION OF THE COURT
Arthur J. Cooperman, J.
This small claims proceeding involving a claim for legal fees and disbursements presents, several serious questions relating to the attorney-client relationship.
Plaintiff was retained by defendant on November 8,1979 to prosecute a personal injury claim resulting from an automobile accident that occurred on November 6,1979. A printed retainer agreement (not the Blumberg type) was executed. Additionally, defendant signed a printed retainer agreement for plaintiff to “prosecute” defendant’s claim for no-fault benefits arising out of the same accident.
Both retainer agreements provided for the sliding-scale contingent retainer. The no-fault retainer contained the following additional clause: “This shall not bar my said attorney’s application for reasonable attorney fees to be *993 paid by the No Fault Insurer on a work-time, percentage of recovery, novelty of issue, or other basis, where applicable”.
The final clause contained in both retainer agreements provided as follows: “I (we) hereby irrevocably appoint my (our) said attorney, Stanley hausen, as my (our) attorney-in-fact to execute and sign my (our) name(s) to any and all releases, checks, drafts, and other documents, instruments, and papers relating or pertaining to the aforesaid accident, injuries, damages and claim(s).” Following his retention, plaintiff began pursuing the personal injury and no-fault claims. In May, 1981, defendant discharged plaintiff from the handling of the negligence case. At the time, no lawsuit had been commenced against the tort-feasors.
The no-fault carrier had made payment on defendant’s lost earnings claim in the sum of $1,380 in April, 1981, which funds were still in plaintiff’s possession at the time of his discharge.
It is plaintiff’s contention that (1) by virtue of his no-fault retainer agreement he is entitled to a portion of the no-fault recovery (50% of the first $1,000 and 40% of the balance — $380) totaling $652; (2) by reason of the services expended in handling the personal injury matter he is entitled to a quantum meruit recovery for 50 hours of work; and (3) disbursements are due him in the sum of $102.50. The total amount sought herein as damages is $1,500.
May a contingent retainer agreement be utilized in the collection of a no-fault claim? That question, raised by this case, presents a more significant issue regarding the extent to which an attorney may go in securing a fee in a no-fault claim that comes into his office along with the more serious personal injury claim.
It is established that an attorney and client may agree to the compensation to be paid in a given case (see Judiciary Law, § 474). Moreover, it has been judicially declared that in a no-fault matter, an attorney is not necessarily limited to recovering a fee only from the insurer, and may enter into a private arrangement with his client (Matter of Rachlin v Lewis, 96 Misc 2d 701).
*994 But such a private arrangement may not permit reliance upon a contingent retainer agreement. Section 691.20 (e) (7) of the Rules of the Appellate Division, Second Department, in providing for the manner in which contingent retainers may be utilized in a variety of actions, specifically prohibits compensation on that basis* in no-fault claims (see 22 NYCRR 691.20 [e] [7]).
In the case before this court, plaintiff secured a contingent retainer agreement in the no-fault claim in the same way as he did in the personal injury action. The agreement contained an additional clause permitting application to the no-fault carrier for reasonable attorney’s fee. There is no question, however, that an attorney may look to the insurer for payment of a fee only after the claim is rejected (see Insurance Law, § 675, subd 1; 11 NYCRR 65.16 [c] [8] til).
That, apparently, was not the situation here. Plaintiff testified that he personally went to the insurance carrier’s office to persuade the adjuster to pay claimant on his lost earnings claim. The record demonstrates, however, that not only was there never a formal denial of the claim by the insurer, but, also, payment was made within 30 days of submission by plaintiff to the carrier of the proper wage verification claim form. Plaintiff has not satisfied this court that a disputed claim served as a foundation for his claim of compensation (see Matter of Nelson, 102 Misc 2d 391).
It would appear that plaintiff attempted to “cover all bases” in assuring a fee on a no-fault claim that came into his office merely as a concomitant to the personal injury action. The claim was not rejected, nor was the contingent retainer a proper basis for compensation. His persistence in pursuing a fee, under the circumstances, is extraordinary. (See Code of Professional Responsibility, EC 2-23, DR 2-106.)
Plaintiff is not entitled to a fee with respect to his client’s no-fault claim.
The plaintiff attorney’s right to recovery for legal services on the negligence claim originally rested upon the retainer agreement. Upon his discharge, however, he be-
*995 came entitled to recover a fixed sum on a quantum meruit basis (Paulsen v Halpin, 74 AD2d 990). If the lawyer is discharged for cause, he loses his right to payment of his fee and any retaining lien on his client’s papers (Williams v Hertz Corp., 75 AD2d 766). On the other hand, if the removal of the attorney does not involve misconduct, a lien may be exercised (Levitas v Levitas, 96 Misc 2d 929). In the case at bar, only the attorney testified. Although he acknowledged being discharged, no testimony was adduced as to the cause of his removal.
After dismissal of an attorney, the canceled retainer agreement no longer serves as the sole standard for the attorney’s compensation (Paulsen v Halpinsupra). The court may look to the volume and quality of the professional services actually performed, among other factors, in determining their value (see Code of Professional Responsibility, DR 2-106 [B]).
Plaintiff herein was retained on November 8, 1979. Although there was a flurry of office activity in the weeks following (requesting reports and records) he testified that he did not prepare a summons and complaint until March, 1981. These papers were never served due to the inability of the process server to locate the owner of the offending vehicle. Plaintiff further testified that the time spent on correspondence and telephone communications totaled 50 hours.
From the record herein, it cannot be said that defendant discharged plaintiff for cause, especially since defendant did not testify. However, there was a notable absence of testimony on plaintiff’s part in explanation of his failure to institute suit for a year and a half after he was retained. Under the circumstances, it cannot be said that he was removed without cause either.
In any event, in weighing all the elements required to determine the value of professional services rendered in this personal injury case, this court finds that plaintiff is entitled to $250.
Plaintiff testified that he disbursed $102.50 in obtaining police reports, accident reports, hospital records, etc. He is entitled to that sum also.
*996 While the effort of plaintiff in obtaining an “irrevocable” appointment as attorney in fact and unlimited authority to sign his client’s name on checks and releases played no part in this decision, the court notes with concern that the attorney apparently engages in such a practice on a routine basis.
Judgment for plaintiff in the sum of $352.50. In view of the fact that plaintiff has withheld the sum of $1,380 from defendant since April, 1981, no interest is awarded.