536 S.E.2d 494

**Douglas BASS, Plaintiff Below, Appellee,**

v.

**Laura COLTELLI–ROSE, Defendant Below, Appellant.**

No. 26658.

Supreme Court of Appeals of West Virginia.

Submitted March 21, 2000.

Decided July 14, 2000.

Concurring and Dissenting Opinion of Justice Davis July 19, 2000.

Dissenting Opinion of Justice Scott Oct. 2, 2000.

that the recovery of such insurance proceeds was not within the terms of the contracts between Rose and Mr. Bass. We reverse, concluding that such recoveries were contemplated by the provisions of the contracts.

## I.

## BACKGROUND

The basic facts of this case are not disputed. Douglas Bass was a guest passenger in a car driven by Darren Weakley, when that car was struck on September 30, 1990 by a vehicle driven by Cary Dunham. Mr. Bass was a minor at the time of the accident, and shortly thereafter, on October 16, 1990, his mother, Mabel Bass, hired Rose to represent both her and her son. Mrs. Bass signed an "Authority to Represent" form which authorized Rose to undertake representation with respect to a "claim against Cary Dunham, or whoever is liable for my son, Douglas Bass' injuries or damages resulting from an accident or incident which occurred on or about September 30, 1990 at Berkeley County, WV." The agreement further specified the payment of a one-third contingency fee, and contained an acknowledgment that "[i]t is understood and agreed that the fee will be calculated on the entire amount of the recovery (settlement or verdict)."

Rose's representation of the Basses resulted in recoveries from several different sources. Initially, Rose sought and obtained reimbursements for Douglas Bass's medical bills under the medical payments coverage of Weakley's automobile insurance policy with State Farm Insurance Company, up to the policy's $25,000 limit. Rose deducted her one-third contingent fee from these proceeds ($8,333.33), and remitted the remaining amounts to Mrs. Bass. Mabel Bass was aware of this procedure, and initially lodged no complaint.

In August 1991, the liability portion of Douglas Bass's claim was resolved through a negotiated settlement. Dunham's liability insurance carrier agreed to pay $200,000, with Rose also obtaining $60,000 under Mrs. Bass's underinsured motorist coverage with State Farm. Douglas Bass had turned eighteen on June 18, 1991, and thus was paid

D. Michael Burke, Esq., Burke & Schultz, Martinsburg, West Virginia, Attorneys for Appellee.

Cynthia S. Gustke, Esq., Elkins, West Virginia, Attorney for Appellant.

PER CURIAM:

Appellant Laura Coltelli–Rose ("Rose"), defendant below, appeals the January 28, 1999 final order of the Circuit Court of Berkeley County, which granted summary judgment in favor of appellee Douglas Bass, plaintiff below, on his claim that Rose had improperly charged a contingent fee on recoveries obtained under the medical payments coverage of two separate automobile insurance policies. The circuit court ruled

these sums directly. Rose likewise imposed a one-third contingent fee on this recovery, which has never been disputed.

At some point after the liability settlement in August, 1991, the relationship between Mrs. Bass and her son became strained. Because she perceived a conflict of interest in representing both of them, Rose ceased representing Mrs. Bass, who was subsequently left out of a new contingent fee agreement with Douglas Bass executed on September 28, 1992.[1]

Rose had for some time been seeking additional reimbursement for medical expenses under the medical payments coverage of Mrs. Bass's own insurance policy with State Farm. State Farm initially declined to stack medical coverage payments; however, in August 1992, Rose secured payment of $21,666.52, which was paid to Douglas Bass directly. Rose again took one-third of the recovery, or $7,221.17, as her contingent fee.

Mrs. Bass had previously sought and obtained new counsel in April, 1992, who subsequently demanded that Rose refund the one-third contingent fee she took from the $25,000 medical payment benefit on the Weakley vehicle. At the apparent suggestion of ethics counsel for the West Virginia State Bar, Rose reduced her fee from one-third to one-fourth of the first $25,000 medical payment benefit. She paid this refund ($2,083.33) directly to Douglas Bass. However, the matter was not resolved, and on January 15, 1993, Mrs. Bass filed this action against Rose and Douglas Bass. An amended complaint was filed on April 15, 1993, where Douglas Bass became the party plaintiff. On November 9, 1993, the circuit court granted the defendants' motion for summary judgment. The court later, however, rescinded its initial order, and attempted to certify various questions to this Court. Review was initially granted, but this Court later dis-

missed the matter, concluding that the issues raised were not factually developed so as to permit adjudication of the certified questions. *See Bass v. Coltelli,* 192 W.Va. 516, 453 S.E.2d 350 (1994).

The circuit court subsequently granted summary judgment to Douglas Bass on January 28, 1999, concluding that "[t]he contingent fees charged by [Rose] on the medical payment recoveries were not covered by the contingent fee contract entered into by either Mabel Bass or Douglas Bass...." The rationale behind this conclusion was as follows:

It is the court's opinion that these two contingent fee contracts ... entered into between the parties were related to and dealt with a tort claim which Mabel and Douglas Bass had against Cary Dunham, or whoever caused ... the injuries Douglas Bass received in the accident described in the contract, and did not cover, under their terms, any moneys which would be payable under any contract of insurance, except insurance carried by Cary Dunham, or which covered the operation of his vehicle at the time he caused the accident.

The court ordered Rose to refund $13,472.17 in contingent fees previously retained, less a quantum meruit fee for her services. It is from this order that Rose now appeals.

## II.

## DISCUSSION

This case presents the Court with the straightforward task of determining whether the circuit court properly interpreted the fee contract in question. Specifically, we must ascertain whether the contract between Rose and the Basses contemplated a contingency fee with respect to a recovery obtained under the medical payments coverage afforded by an automobile insurance policy. We find that it did.[2]

---

1. The terms and conditions of this second fee agreement signed by Douglas Bass were identical to those contained in the document previously executed by Mabel Bass in October 1990.

2. Douglas Bass asks this Court take the matter further, and consider whether the circuit court's ruling should be affirmed on the basis that the contingent fee imposed by Rose was excessive. In making this argument, Mr. Bass relied pri-

marily upon *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986), where the Court held that charging a one-third contingency fee to collect the undisputed proceeds of a life insurance policy was excessive. While we have previously indicated that "[w]e are not wed ... to the lower court's rationale, but may rule on any alternate ground manifest in the record." *Conrad v. ARA Szabo,* 198 W.Va.

The court below determined that the contract in question was not ambiguous. As we stated in *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W.Va. 97, 468 S.E.2d 712 (1996), "it is for a trial court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe the contract according to its plain meaning." *Id.* at 100, 468 S.E.2d at 715. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). *See also* syl. pt. 2, *Orteza v. Monongalia County Gen. Hosp.*, 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed."). We undertake plenary review of a lower court's facial interpretation of a written agreement. *See Fraternal Order of Police*, 196 W.Va. at 100, 468 S.E.2d at 715; *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 64 n. 23, 459 S.E.2d 329, 342 n. 23 (1995).[3]

In this case, the circuit court interpreted the pertinent contract language, "claim against ... whoever is liable for ... injuries or damages resulting from [the] accident," as referring only to those parties who may be liable in tort for the injuries sustained by the client, Douglas Bass. We do not read this language as restricting Rose's compensable services to obtaining recovery only from wrongdoers. This Court has consis-

tently emphasized that " '[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning.' " Syl. pt. 3, *Bennett v. Dove*, 166 W.Va. 772, 774, 277 S.E.2d 617, 619 (1981) (quoting syl. pt. 4, *Williams v. South Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1903)). *See also Nisbet v. Watson*, 162 W.Va. 522, 530, 251 S.E.2d 774, 780 (1979) ("the language of a contract must be accorded its plain meaning.").

As this Court long ago recognized, the term "liable" has expansive meaning, which encompasses a party being " 'bound or obliged in law or equity'; 'responsible, answerable, or compellable to make satisfaction, compensation, or restitution'; 'obligated'; 'accountable for or chargeable with,' 'as liable for money.' " *Wilhelm v. Parkersburg, M. & I. Ry. Co.*, 74 W.Va. 678, 683, 82 S.E. 1089, 1091 (1914) (citations omitted). *See also Black's Law Dictionary* 915 (6th ed. 1990). Other courts have likewise given this term broad meaning. In *National Sur. Corp. v. Michigan Fire & Marine Ins. Co.*, 59 F.Supp. 493 (D.Minn.1944), *aff'd*, 156 F.2d 329 (8th Cir.1946), a grain warehouser had obtained a fire insurance policy providing coverage for damage to, among other things, "merchandise held in trust," so long as the warehouser was "liable therefor." *Id.* at 494. When a portion of the grain that the warehouser was storing as bailee was subsequently destroyed by fire, the insurer refused to indemnify, asserting that word "liable" as contained in the policy referred only to tort

362, 369, 480 S.E.2d 801, 808 (1996), the Court has more recently cautioned that "[a]lthough our standard of review for summary judgment remains *de novo*, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review," syl. pt. 3, in part, *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997). Because the circuit court has not fully delineated the facts necessary to determine whether, under the circumstances of this case, the contingency fee was excessive, we decline to undertake analysis regarding whether summary judgment was appropriate on the alternative ground advocated by Mr. Bass.

3. When a court's determination as to the meaning of a contract goes beyond the text of the agreement, our review is more deferential:

[W]hen a trial court's answers rest not on plain meaning but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, appellate review proceeds under the "clearly erroneous" standard. The same standard pertains whenever a trial court decides factual matters that are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms *per se*). In these types of cases, the issues are ordinarily fact-dominated rather than law-dominated and, to that extent, the trial court's resolution of them is entitled to deference.

*Fraternal Order of Police*, 196 W.Va. at 100, 468 S.E.2d at 715 (footnote omitted).

liability, to the exclusion of any contractual obligation. The court in *National Surety* rejected this argument, noting that "[t]he general word 'liable' does not indicate of itself upon what the insured's liability must be predicated upon." *Id.* at 495. The use of this term in the present fee contract is no more restrictive.

Rather than limiting the application of Rose's contingent fee to recoveries obtained from third-party tortfeasors, we interpret the plain wording of the provision in question to encompass any recovery secured from a party who is legally obligated to compensate Douglas Bass for the losses occasioned by the car accident in which he was involved. We therefore hold that the circuit court erred in ruling to the contrary.[4]

### III.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Berkeley County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DAVIS, Justice, concurring in part and dissenting in part:

(Filed July 19, 2000)

This Court was asked to determine whether the trial court committed error by concluding that a contingency fee contract between attorney Laura Coltelli–Rose and her clients, Mabel Bass and Douglas Bass, provided for no recovery of fees for medical payments obtained on behalf of the Basses. The majority opinion concluded that the trial court indeed committed error because such a recovery was provided for in the contract. I agree with the majority's decision that Rose was entitled to compensation under the contract for her work in recovering medical payments from Darren Weakley's insurer. I disagree, however, with the majority's deci-

sion that the contract permitted Rose to recover fees from the medical payments obtained from her clients' own insurer. Therefore, I concur in part and dissent in part to the majority's opinion.

### A. THE CONTRACT PERMITTED RECOVERY OF FEES FROM MEDICAL PAYMENTS OBTAINED FROM DARREN WEAKLEY'S INSURER

Rose attempted to obtain one-third of the proceeds from the medical payments collected from Weakley's insurer. She recovered $25,000.00 from the insurer. Thus, Rose initially retained one-third ($8,333.00) of the recovery based upon the language of her contract with the Basses.[1] Under the contract, Rose and the Basses agreed that she would receive one-third of the recovery from "whoever is liable for ... injuries or damages resulting from [the] accident."

The circuit court restricted the above quoted-language to mean that Rose could recover only the fees from the person who struck the car in which Mr. Bass was riding when he was injured. The majority opinion correctly found that such an interpretation of the contract was wrong. In the context of the claim against Mr. Weakley's insurer, there is no ambiguity in the contract. It is a well settled principle of law that "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syllabus point 2, *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969).

Weakley was the driver of the car in which Mr. Bass was a passenger when he sustained his injuries. Neither Mr. Bass nor his mother, Mrs. Bass, owned the vehicle driven by Weakley. While the record in this case does not disclose whether or not a separate action was initiated against Weakley, it is clear that a potential claim was present. In other words, Weakley was a potential adversary. In this posture, Rose's contract with the Bass

---

**4.** Rose also brings an assignment of error claiming that the circuit court abused its discretion in failing to disqualify Douglas Bass's lawyer, based upon, *inter alia*, the fact that counsel had initially represented Mabel Bass in the present action. This matter was the subject of a petition for writ of prohibition filed in this Court in April 1998,

which was previously denied. We find this claim to be meritless.

**1.** Ultimately, Rose retained one-fourth of the recovery.

family clearly entitled her to receive one-third of any recovery obtained from Weakley.

## B. THE CONTRACT WAS AMBIGUOUS AS TO WHETHER ROSE COULD RECOVER FEES FROM MEDICAL PAYMENTS OBTAINED FROM THE BASSES' INSURER

Although I find the contract was not ambiguous as to Rose's recovery of fees involving Weakley, I believe ambiguity existed as to whether the contract permitted the recovery of legal fees from medical payments obtained from the Basses' own insurer.[2] The majority opinion has relied upon language from an opinion written in 1914 to conclude that the word "liable," as used in the contract, has broad enough meaning to include recovery of fees from medical payments obtained from the Basses' own insurer. The majority opinion is wrong.

The proper construction of the language in the contract is not limited to the term "liable." The controlling language is "liable for ... injuries or damages resulting from [the] accident." Rose contends that this language clearly shows that she contemplated recovery of fees from monies obtained from the Basses' own insurer. No such clarity exists. The language of the contract is ambiguous. "It is also well settled that any ambiguity in a contract must be resolved against the party who prepared it." *Nisbet v. Watson,* 162 W.Va. 522, 530, 251 S.E.2d 774, 780 (1979). *See Hays & Co. v. Ancro Oil & Gas, Inc.,* 186 W.Va. 153, 155, 411 S.E.2d 478, 480 (1991).

I have little doubt that Rose may have contemplated recovering fees for monies obtained from the Basses' own insurer.[3] However, such a contemplation was not made evident in the contract. Under our case law,

any ambiguity in the contract has to be interpreted against the maker of the contract. Here, this contract maker is Rose. Therefore, the circuit court was correct in ruling against Rose as to the portion of her fee that resulted from monies paid by the Basses' own insurer. The majority opinion was wrong in reversing the lower court's ruling in this regard.

For the reasons stated, I respectfully concur in part and dissent in part to the majority opinion.

SCOTT, Justice, dissenting:

(Filed Oct. 2, 2000)

I dissent from the majority's interpretation that the contractual language, "claim against ... whoever is liable for ... injuries or damages resulting from ... [the] accident," includes medical payments coverage and, therefore, that coverage is properly subject to a contingent fee. The lower court correctly interpreted the contractual provisions to mean that "[t]he contingent fees charged by ... [Ms. Coltelli–Rose] on the medical payment recoveries were not covered by the contingent fee contract entered into by either Mabel Bass or Douglass Bass ...," and ordered Ms. Coltelli–Rose to refund the $13,472.17 in contingent fees previously retained, less a quantum meruit fee for her services.[1] The insurance company which provide coverage to Mr. Bass was not an entity "liable for ... injuries or damages resulting from ... [the ] accident." Rather, the insurance company was liable to Mr. Bass because of the terms of the insurance policy, a claim of contract, not tort. The terms of the contingent fee agreement did not otherwise make any reference to medical payments coverage or other first party bene-

---

**2.** Rose recovered $21,666.00 in medical payments from Mrs. Bass's insurer. Rose then retained $7,221.00 as her contingency fee for retrieving these monies.

**3.** It is most unusual for lawyers to seek fees from medical payments. In fact, the majority of the plaintiffs' bar *does not* take a contingency fee on medical payment recoveries obtained from their client's own insurer.

**1.** We have previously stated that even

[b]efore a fee is awarded under the theory of quantum meruit, there must first be a determination of the reasonable value of the attorney's services rendered on behalf of the client. Identifying the reasonable value of an attorney's services requires an examination of various factors that concern such issues as the amount of time spent on the case, the difficulty of the case, and the outcome reached in the case.

*Pritt v. Suzuki Motor Co., Ltd.,* 204 W.Va. 388, 396, 513 S.E.2d 161, 169 (1998).

fits. It is well settled that "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126 (1969). Thus, under the plain and unambiguous terms of the contingent fee agreement, the lower court correctly concluded that "whoever is liable" referred to the person responsible for causing Mr. Bass' injuries, i.e., the tortfeasor.

I also disagree with the majority's total failure to consider whether the contingent fee charged was reasonable and ethical. If the majority would have bothered to go beyond the question of whether the contingent fee agreement was ambiguous, a much different opinion would have been reached and much more important principles would have been discussed.

Even though the circuit court was not required to address whether the contingent fee imposed by Ms. Coltelli–Rose was reasonable or excessive, it is well established that "[c]ourts have inherent powers to supervise the collection of attorney fees and monitor contingent fee agreements." *Jenkins v. McCoy,* 882 F.Supp. 549, 553 (S.D.W.Va. 1995). "Determination of whether a contingent fee is reasonable is not limited to an interpretation of the agreement itself. The court must consider the circumstances surrounding both *the negotiation and the performance* of the contingency fee contract." *Id.,* at 556 (emphasis added and citations omitted). In other words, the reasonableness of any attorney fee is determined by circumstances which appear after the fact, as well as the facts as they appeared to be or might become as seen before the event.

Generally, "courts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client." *Kopelman and Assocs., L.C. v. Collins,* 196 W.Va. 489, 496, 473 S.E.2d 910, 917 n. 7 (1996). In determining whether a contingent fee contract is reasonable or excessive, we apply the following analysis:

"The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syllabus Point 4, *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986).

Syl. Pt. 1, in part, *Erwin v. Henson,* 202 W.Va. 137, 502 S.E.2d 712 (1998); *accord Daily Gazette Co. v. West Virginia Dev. Office,* 206 W.Va. 51, 64, 521 S.E.2d 543, 556 (1999).

Unfortunately, the majority deemed it unnecessary to engage in discussion of the reasonableness or excessiveness of the fee charged by Ms. Coltelli–Rose. The facts, however, clearly indicate that the $25,000 payment for medical expenses incurred by Douglas Bass, which was received from the insurance company that insured the automobile in which Mr. Bass was a passenger at the time of the accident, was not questioned and was received routinely and without particular problems. As a matter of fact, the only service performed by Ms. Coltelli–Rose concerning this payment was the sending of letters to the insurance company which recited what services the bills were for and from which medical service providers they came. Regarding the second payment for medical expenses in the amount of $21,666.52, which was received from the insurance company that insured the automobile owned by Mr Bass or his mother, Mabel Bass, the lower court noted that the receipt of this recovery "was apparently more difficult."[2] Thus, it is

---

2. The extent of just how difficult this was is not clear in the circuit court's final judgment order.

While the circuit court noted that "there were apparently 'anti-stacking' provisions in the poli-

obvious that Ms. Coltelli–Rose charged $8,333, of which she latter refunded $2,083, to perform the service of writing several letters and $7,221 for basically the same service. It is clear to me that these fees should have been found to be excessive. Basically, Ms. Coltelli–Rose charged and received an exorbitant amount of attorney's fees for collecting medical payments coverage under a contract which was not in dispute and which was paid by the insurer without major controversy.

Not only is the contingent fee in this case unreasonable, it is potentially unethical as well. Rule 1.5 of the West Virginia Rules of Professional Conduct, which governs attorney's fees in general, dictates what elements comprise a reasonable fee for the provision of professional legal services:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.*

Further, this Court has previously held in syllabus points two and three of *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986), that:

If an attorney's fee is grossly disproportionate to the services rendered and is charged to a client who lacks full information about all of the relevant circumstances, the fee is "clearly excessive" within the meaning of Disciplinary Rule 2–106(A), even though the client has consented to such fee. The burden of proof is upon the attorney to show the reasonableness and fairness of the contract for the attorney's fee.

In the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a "clearly excessive fee" within the meaning of Disciplinary Rule 2–106(A).

177 W.Va. at 357, 352 S.E.2d at 108, Syl. Pts. 2 and 3.

In reaching the above-mentioned holdings, we expressly discussed the fact that a contingent fee must be, in fact, contingent, stating:

The requirement that the client be fully informed applies especially to a contingent-fee contract. The client needs to be fully informed as to the degree of risk justifying a contingent fee. Courts generally have insisted that a contingent fee be truly contingent. The typically elevated contingent fee reflecting the risk to the attorney of receiving no fee will usually be permitted only if the representation indeed involves a significant degree of risk. The clearest case where there would be an absence of real risk would be a case in which an attorney attempts to collect from a client a supposedly contingent fee for obtaining insurance proceeds for a client when there is no indication that the insurer will resist

---

cies" which could have made the collection of the second medical payment amount more difficult, the Appellee, Mr. Bass, indicated that even the second amount was "obtained on an uncontested basis" from the Appellee's insurer. The Appellee states in footnote five of his brief that

"Laura Rose attempts now to overstate the extent and necessity of her services in suggesting that a 'stacking' issue interfered with full payment of the med pay, but there is no evidence to support this assertion."

the claim. In the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a "clearly excessive fee" within the meaning of Disciplinary Rule 2–106(A). *See Florida Bar v. Moriber*, 314 So.2d 145, 146–49 (Fla.1975) (33⅓% of moneys due to client upon mother's death; layman could have performed same services as attorney; major funds passed to client by operation of law); *In re Teichner*, 104 Ill.2d 150, 153–54, 160–63, 83 Ill.Dec. 552, 553–54, 557–58, 470 N.E.2d 972, 973–74, 977–78 (1984) (25% of group life insurance; insurer paid proceeds routinely without question; attorney's claimed services were "artificial" and "exaggerated"), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); *In re St. John*, 43 A.D.2d 218, 219–22, 350 N.Y.S.2d 737, 738–40 (1974) (33⅓% of accidental death benefits; attorney spent 20 hours completing application and conferring with insurer; not a "collection matter"); *In re Stafford*, 36 Wash.2d 108, 113, 119, 216 P.2d 746, 748, 752 (1950) (en banc) (50% of life insurance; attorney spent 47 hours to locate beneficiary; attorney had beneficiary execute a contingent-fee contract for attorney to collect for client "an interest in a small estate").

Contracts for contingent fees, generally having a greater potential for overreaching of clients than a fixed-fee contract, are closely scrutinized by the courts where there is a question as to their reasonableness. This close scrutiny arises from the duty of the courts to guard against the collection of a clearly excessive fee, thereby fulfilling the primary purpose of attorney-disciplinary proceedings, specifically, protecting the public and maintaining the integrity of the legal profession. *See In re Teichner*, 104 Ill.2d 150, 160, 83 Ill.Dec. 552, 557, 470 N.E.2d 972, 977 (1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); F. MacKinnon, Contingent Fees for Legal Services 44–45 (1964).[3]

*Tatterson*, 177 W.Va. at 362–63, 352 S.E.2d at 113–14 (footnote omitted and footnote added).

Under these rules of professional conduct, as well as the standards enunciated by this Court interpreting those rules, the contingent fee charged by Ms. Coltelli–Rose is excessive, unreasonable, and, at a minimum, raises the question that said fee might be unethical as well. Not only was the time, labor, legal skills and experience put forth by Ms. Coltelli–Rose to receive the medical payment proceeds de minimis, at best; but, the fee was simply not based upon any contingent event. For the majority to completely disregard any discussion of the ethical duty that a lawyer has to his/her client not to charge a fee that is clearly excessive demonstrates an abandonment of the duty of this Court to "guard against the collection of a clearly excessive fee," "protect[ ] the public and maintain[ ] the integrity of the legal profession." *See id.* at 363, 352 S.E.2d at 114. As we have held on many occasions, "[t]his Court is the final arbiter of legal ethics problems...." Syl. Pt. 3, in part, *Committee on*

**3.** *See Tatterson*, 177 W.Va. at 363, 352 S.E.2d at 114 n. 9 (citing *In re Kennedy*, 472 A.2d 1317, 1322–23, 1330–31 (Del.) (50% of temporary total disability workers' compensation to which there was clear entitlement), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2388, 81 L.Ed.2d 346 (1984); *Horton v. Butler*, 387 So.2d 1315, 1317 (La.Ct. App.) (25% of fire insurance proceeds; uncontested loss; attorney merely contacted insurer and accepted proceeds check), *cert. denied*, 394 So.2d 607 (La.1980); *Hausen v. Davis*, 112 Misc.2d 992, 993, 448 N.Y.S.2d 87, 89 (Civ.Ct. 1981) (40–50% of undisputed no-fault insurance; attorney entitled to no fee); *In re Hausen*, 108 A.D.2d 206, 206–08, 488 N.Y.S.2d 742, 742–43 (1985) (same matter as in *Hausen v. Davis*; clearly excessive fee under DR 2–106(A)); *Harmon v. Pugh*, 38 N.C.App. 438, 442–43, 445, 248 S.E.2d 421, 423–25 (1978) (20% of life insurance; attorney through correspondence obtained medical information and autopsy report; attorney entitled to compensation on *quantum meruit* basis for "menial tasks" in uncontested claim), *petition for discretionary review denied*, 296 N.C. 584, 254 S.E.2d 33 (1979); C. Wolfram, *Modern Legal Ethics* § 9.4.2 at 532–33 (1986). *See generally* American Bar Foundation, *Annotated Code of Professional Responsibility* 100–02 (1979); annotation, *Attorney's Charging Excessive Fee as Ground for Disciplinary Action*, 11 A.L.R.4th 133 (1982)).

*Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). For the majority to completely fail to tackle at least an examination of the ethical considerations of the contingent fee charged in this case, undermines this Court's responsibility to uphold the ethical principles of the legal profession and sends the wrong message to the members of our Bar.

For these reasons, I dissent.