RYAN et al., Appellees,

v.

TERRA VISTA ESTATES, INC., Appellant.

[Cite as *Ryan v. Terra Vista Estates, Inc.* (1995), 102 Ohio App.3d 474.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66380.

Decided April 10, 1995.

*Daniel J. Ryan, pro se,* and *Michael J. Flament,* for appellees.

*William F. Steiner,* for appellant.

PATRICIA ANN BLACKMON, Judge.

This appeal is from a decision of the trial court awarding attorney fees to Daniel Ryan, plaintiff-appellee, for legal services rendered on behalf of Terra Vista Estates, Inc., defendant-appellant. Terra Vista assigns the following four errors for our review:

"I. The trial court erred in determining that plaintiff had a contingency fee contract of 40%.

"II. The trial court erred in determining the value of the Walton Hills asset was $507,439.55 instead of amount received of $207,000.00.

"III. The court erred in determining that the federal court funds of $34,013.18 dated April 15, 1993 was not received by plaintiff.

"IV. The court erred in determining that plaintiff only received $11,000.00 of the federal court funds of $44,000.00 dated June 24, 1989 and erred in failing to show any receipt of the retainer of $4,000.00."

After reviewing the record and the arguments of the parties, we affirm the trial court's determination that the parties' contingency fee contract was for forty percent and its findings with respect to the distribution of the federal court funds. However, we reverse the portion of the trial court's decision that assigns a value of $507,439.55 to the judgment obtained by Ryan on behalf of Terra Vista. Because we are unable to determine how the trial court computed the value of the judgment, we remand this cause to the trial court for the limited purpose of redetermining the amount of the judgment. The apposite facts follow.

Adrian DeFranco is the majority shareholder and Vice–President of Terra Vista Estates, Inc. During the 1980s, Terra Vista was approached by a representative of the Cuyahoga Valley National Park who expressed an intent to purchase land owned by Terra Vista in Valley View, Ohio. Anticipating the sale, Terra Vista borrowed nearly $500,000 from its accountant, Thomas Moriarty, in order to maintain the land. Several warranty deeds were issued in favor of Moriarty as security for the loans.

In 1984, Moriarty sold the land to the National Park Service for $800,000. In December 1985, DeFranco hired Ryan to represent Terra Vista Estates in proposed litigation against Moriarty in federal court. Terra Vista wanted a temporary restraining order on the distribution of the $800,000. The federal complaint was filed on November 27, 1985.[1] In that action, Terra Vista and DeFranco sought to recover from the National Park Service, Moriarty, and escrow agent First Akron Corporation for certain personal property and buildings located on the Valley View land.

Ryan and DeFranco began discussions about possible future litigation against Moriarty and Valley View Estates in connection with the land. In a January 24, 1986 letter, Ryan outlined his fee arrangement with DeFranco.

The letter provided in pertinent part:

"[I]t is our understanding that I am to receive Four Thousand Dollars ($4,000.00) to cover the expenses and the attorney fee in handling the Federal matter. At the resolution of the Federal matter against the Park Board and Mr. Moriarty, I am to receive forty percent of any funds received on the action that is in excess of the Four Thousand Dollars ($4,000.00) that has already been paid by

---

1. Hereinafter referred to as the Federal litigation.

you and which is to be deducted from the attorney fee that is to be paid on the percentage basis."

On February 20, 1986, Ryan sent DeFranco a letter changing the fee agreement. The letter provided:

"To [e]nsure an understanding as to the fees to be charged in handling the [Moriarty] matters, it is our understanding that I am to receive Four Thousand Dollars ($4000.00) to cover the expenses and the attorney fee in handling the Federal matter. At the resolution of the Federal matter against the Park Board and Mr. Moriarty, I am to receive thirty percent of any funds received on the action that is in excess of the Four Thousand Dollars ($4000.00) that has already been paid by you and which is to be deducted from the attorney fee that is to be paid on the percentage basis."

At trial, Ryan testified that the agreement was changed because of DeFranco's unwillingness to pay a forty-percent contingency fee and his representations to Ryan that no extensive work would be required to collect the money claimed by Terra Vista.

A complaint was filed against Moriarty on September 2, 1986 in case No. 115658.[2] During the discovery process, Ryan became aware that the action against Moriarty was somewhat more complicated than he had been lead to believe. In December 5, 1986, Ryan sent DeFranco a letter informing him that he would continue his involvement with the Moriarty litigation under the original forty-percent contingency agreement. Ryan attached a draft "Attorney Agreement" which provided for Ryan to receive forty percent of any judgment obtained in the cases and thirty percent in the event of a settlement. Although the record does not contain a signed copy of the December 1986 "Attorney Agreement," DeFranco admitted at trial that he signed the agreement and returned it to Ryan.

On June 15, 1988, a judgment was reached against Moriarty in case No. 115658. The trial court awarded Terra Vista $400,560. In July 1988, Ryan told DeFranco that Moriarty had absconded and that the judgment was not collectable. Because DeFranco had not paid Ryan's attorney fees, Ryan refused to represent DeFranco in collection efforts unless DeFranco agreed to pay Ryan an hourly rate for his collection efforts. DeFranco agreed. On July 25, 1988, Ryan and DeFranco executed a written "Attorney Agreement" which provided that Ryan was to receive thirty percent of any judgment or settlement reached in the Moriarty litigation and the Valley View litigation.

---

2. Hereinafter referred to as the Moriarty litigation. Although the date is unclear, Ryan also filed a complaint on behalf of Terra Vista against the village of Valley View (hereinafter referred to as the Valley View litigation).

In June 1989, the federal court ordered the distribution of $100,000, which had been placed in escrow with First Akron Corporation and later deposited with the federal court. The order specified that $10,000 was to be paid to Thomas Moriarty. In addition, $44,000 would be applied to the judgment against Moriarty in case No. 115658. The remaining balance (approximately $46,000) was to be held on deposit with the federal court.

In May 1991, a judgment was rendered in the Valley View litigation. The trial court awarded Terra Vista $95,000. On May 8, 1991, the village of Valley View issued a check for $114,000 payable to "Daniel J. Ryan Attorney for/and Terra Vista Estates, Inc." Ryan also received a payment of $5,280 from KST Oil, one of Moriarty's holdings. Unhappy with the distribution of the $44,000, DeFranco initially refused to sign the settlement check. He eventually signed the check and received $61,486.16. Ryan received $34,200.

On February 25, 1992, Ryan sent DeFranco a letter which provided:

"This is to inform you that since you never paid the two thousand dollars ($2000.00) which you promised to me when we changed the original contract, I am enforcing the original agreement. That means that I shall take forty percent (40%) of any money obtained in judgment or gained in any other manner * * *. All expenses will come out of your portion."

On March 3, 1992, DeFranco replied, denying that he owed Ryan $2,000 and rejecting Ryan's attempt to reinstate the original forty-percent contingency agreement. DeFranco enclosed a copy of Ryan's January 24, 1986 contract with a handwritten notation by Ryan indicating that he had received $4,000 for services rendered. DeFranco claimed the notation was made at a February 17, 1986 meeting between Ryan and DeFranco.

Daniel Ryan, along with his associate, Michael Flament, filed this action in order to recover their attorney fees. In their February 23, 1993 complaint, Ryan and Flament sought to recover $236,408 under the contingency fee agreement entered into by the parties. As evidence of the agreement, Ryan and Flament attached to the complaint copies of two letters sent by Ryan to DeFranco—the January 24, 1986 letter and the February 25, 1992 letter.

In its answer to the complaint, Terra Vista acknowledged that some fees were owed to Ryan and Flament but took exception to the amount sought by the complaint. Terra Vista attached a copy of a February 20, 1986 letter to DeFranco from Ryan which outlined the parties' agreement with respect to prospective litigation against Moriarty. The letter provided:

"To [e]nsure an understanding as to the fees to be charged in handling the matters, it is our understanding that I am to receive Four Thousand Dollars ($4,000.00) to cover the expenses and the attorney fee in handling the Federal

matter. At the resolution of the Federal matter against the Park Board and Mr. Moriarty, I am to receive thirty percent of any funds received on the action that is in excess of the Four Thousand Dollars ($4,000.00) that has already been paid by you and which is to be deducted from the attorney fees that is to be paid on the percentage basis. I understand that there is presently being held by the Bank, One Hundred Thousand Dollars ($100,000.00) which is not to be used in any way to determine a contingency fee."

Shortly before trial, on March 22, 1993, the federal court ordered the release of the remaining money held on deposit in the federal litigation. Pursuant to the court's order, after the deduction of a registry fee, the remaining funds were distributed to the clerk of courts to be applied to the judgment in case No. 115658. A check in the amount of $34,013.18 was sent to Ryan. Ryan also received a payment of $3,436.52 from KST Oil on April 14, 1993.

Property belonging to Moriarty was seized and placed for sale at a Sheriff's auction. The property, located in Walton Hills, Ohio was appraised at $400,000. At the Sheriff's sale, Terra Vista bought the property for $217,000, the minimum bid required by law.

After the trial, the trial court ruled in favor of Ryan, ordering Terra Vista to pay $233,321.74 plus ten percent interest. This appeal followed.

The first issue for our review is whether the trial court erred in finding that Ryan had a contingency fee of forty percent. The trial court made the following finding with respect to the contingency fee:

"Based on all of the evidence adduced at trial, the Court finds that there was an agreement between Daniel J. Ryan and Terra Vista Estates, Inc. that Daniel J. Ryan is to receive forty percent of any money or assets which are obtained in the prosecution of all matters on behalf of Terra Vista Estates, Inc."

When reviewing a finding of fact made by the trial court, an appellate court must determine if the factual conclusion. is supported by competent, credible evidence. See *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742. In this case, the January 24, 1986 letter from Ryan to DeFranco evidenced a contingency fee of forty percent. A handwritten notation on February 17, 1986 and a letter of February 20, 1986 evidence a change in the amount of the contingency to thirty percent. On December 5, 1986, Ryan sent DeFranco a letter agreement seeking to reinstate the forty percent contingency. The letter agreement was not signed by DeFranco, but Ryan continued to represent DeFranco and the record is devoid of any evidence that DeFranco objected to the change in the contingency amount.

A judgment was issued in the Moriarty case on June 15, 1988. At the time the judgment was issued, the parties were under a forty-percent contingency agree-

ment, which was not altered. On July 25, 1988, the parties executed a written agreement changing the contingency amount to thirty percent. This written agreement, signed by both parties, applied to both the Valley View litigation and the uncollected Moriarty judgment. The amount of fees claimed by Ryan out of the Valley View judgment reflects a thirty-percent fee for that litigation.

Ryan claimed that the change in the Moriarty agreement was communicated to DeFranco in December 1986. According to Ryan, he increased the contingency to forty percent after learning the proposed litigation against Moriarty would be more difficult than he was led to believe. However, the July 25, 1988 agreement between the parties specifically referred to both the Valley View litigation and the Moriarty litigation. Ryan admits that he reduced the contingency in exchange for DeFranco's agreement to pay collection costs based on an hourly rate but claims that DeFranco knew he would be charged forty percent on any future recovery on the Moriarty judgment.

"RYAN: At that point hopefully we will work out the best in the future. At this point he was told, I'm charging forty percent. When we resolved these things, I am going to charge you forty percent, because you're not paying your bills."

We find the trial court's finding of a forty-percent contingency was supported by competent, credible evidence in the record. The record indicates repeated negotiations between the parties about the contingency fee. Although the forty-percent contingency claimed by Ryan is in conflict with the terms of the parties' written contract of July 25, 1988, the existence of such conflict is not determinative in this case. The terms of a written contract may be modified by the subsequent acts and agreements of the parties. *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 583 N.E.2d 1056. In this case, Ryan presented evidence that he had informed DeFranco of his intention to enforce the original forty-percent contingency agreement as early as July 1988. Ryan continued his representation of DeFranco for several years thereafter. Although conflicting testimony exists in the record, we recognize the trial court, as factfinder, has the primary responsibility for resolving the conflicts in the evidence. Having found that the trial court's decision was supported by some competent, credible evidence, we find no error in the trial court's determination that the agreement between the parties was for a forty-percent contingency. Terra Vista's first assignment of error is without merit.

In its second assignment of error, Terra Vista argues the trial court erred in its valuation of the Walton Hills property at $507,439.55. DeFranco argues that, since Terra Vista bought the property at a sheriff's sale for $267,000, the property should have been valued at $267,000.

■ We disagree. In its journal entry of September 30, 1993, the trial court specifically stated that $507,439.55 was not the value of the Walton Hills property but was the value of the judgment against Moriarty. However, the trial court did not specify how it arrived at the $507,439.55 figure. Because we are unable to conclusively determine how the trial court arrived at this figure, we remand this cause to the trial court for further findings of fact relevant to its determination.

In its third assignment of error, Terra Vista claims the trial court erred in finding that Ryan had not received a check for $34,013.18 in federal court funds dated April 15, 1993. At trial, Ryan acknowledged receipt of the check.

"STEINER: Do you have in your possession a check for about thirty-three dollars [*sic*]?

"RYAN: There is an amount of money for thirty-four thousand dollars that presently has to be applied to the business. Yes, there is an amount of thirty-four thousand dollars that has to be applied to the bills.

"STEINER: That's in your possession?

"RYAN: Yes.

"STEINER: Is that payable to you and/or Terra Vista?

"RYAN: No.

"STEINER: Paying to whom?

"RYAN: Me."

The trial court's journal entry in the case *sub judice* correctly listed the $34,013.18 as having been collected by Ryan. However, there is no evidence that the check had been negotiated by Ryan or that any of its proceeds had been applied to Ryan's attorney fees. Under the circumstances, the trial court did not err in its itemization of the April 15, 1993 federal court fund check. Terra Vista's third assignment of error is overruled.

Terra Vista next argues the trial court erred in failing to show that Ryan received a retainer of $4,000. The evidence presented at trial indicates that the $4,000 retainer was paid. Ryan testified that DeFranco paid him $2,000 in later 1985. He acknowledged receiving the other $2,000 in his July 13, 1992 letter to Mary Cibella of the Cleveland Bar Association. Ryan wrote:

"Finally, in late January of 1986, Mr. DeFranco returned to my office pursuant to my request made on several occasions. I indicated to Mr. DeFranco that he must pay the additional two thousand dollars or I was going to itemize my hours and withdraw from the action. *Mr. DeFranco gave me a check at that time.*" (Emphasis added.)

■ The evidence indicates that Ryan was paid $4,000 as a retainer. However, although the initial January 24, 1986 agreement provides for deduction of the retainer amount for the attorney fees, the "Attorney Agreement" signed by the parties on July 25, 1988 does not include such a provision. The trial court's failure to deduct the $4,000 retainer was not erroneous.

Finally, Terra Vista argues that the trial court erred in finding that Ryan had received only $11,000 of the $44,000 in federal court funds collected in June 1989. The evidence at trial indicated that Ryan received a check for $44,000 from the federal court fund. He testified that the money was distributed in the following manner:

$11,000 to Tom Gill (for services previously rendered to Terra Vista)

$11,000 to DeFranco

$11,000 to DeSwing Corp. (a corporation controlled by DeFranco)

$5,500 to Ryan

$5,500 to Flament

■ In its journal entry, the trial court correctly credited Ryan with receipt of the $5,500 which went to him and the $5,500 which went to his co-counsel, Flament. Both parties agree that DeFranco received $22,000 ($11,000 individually and $11,000 through DeSwing Corporation). The parties disagree about whether the $11,000 amount allegedly forwarded to Tom Gill should be deemed received by Ryan. Ryan claims that the $11,000 was forwarded to Gill with DeFranco's authorization. DeFranco denies authorizing such payment and denies that Gill had any claim against him for attorney fees. Faced with different assertions, the trial court opted to believe Ryan. Recognizing that decisions about credibility are primarily up to the factfinder, and finding that Ryan's explanation could reasonably be believed by the trial court, we defer to the judgment of the trial court and overrule Terra Vista's fourth assignment of error.

Because we are unable to determine how the trial court determined the $507,439.55, we reverse that part of its decision and remand this cause to the trial court for additional findings of fact.

The judgment is affirmed in part and reversed and remanded in part.

*Judgment accordingly.*

SPELLACY, P.J., and NUGENT, J., concur.