## GRAVEL AND SHEA v. WHITE CURRENT CORPORATION

[752 A.2d 19]

No. 99-083

April 3, 2000. Defendant White Current Corp. appeals a Chittenden Superior Court grant of summary judgment to plaintiff law firm Gravel and Shea on the firm's claim for a contingent fee. Defendant argues that the court erred in concluding that a written fee agreement between plaintiff and defendant and defendant's post-agreement conduct estopped defendant from raising preexisting duty and duress defenses. Defendant also contends that the court erred in finding that no material fact remains in dispute as to the amount of recovery subject to the disputed contingency fee. We affirm.

### I. Facts

In 1986, defendant, through its president, Roger Lamson, entered into a written contingency agreement with attorney William Donahue to represent it in actions against two utility cooperatives, Vermont Electric Cooperative (VEC) and Vermont Electric Generation and Transmission (VEG&T). The fee agreement called for a twenty percent contingent fee if settled before trial, and twenty-five percent if settled after trial began. Defendant was to reimburse Donahue promptly for all out-of-pocket expenses, important because experts played a significant role in the case.

In 1993, defendant and Donahue retained plaintiff law firm to try the damage claim against VEC and VEG&T, as a portion of its liability claim had already been vindicated. There was no written fee agreement between plaintiff and defendant. Plaintiff understood that it would be paid one-half of one-third, or sixteen and two-thirds percent, and advanced a substantial sum of at least $37,500 for expert witnesses.

In June 1994, plaintiff and defendant discussed altering the fee arrangement, but no agreement was reached. Work proceeded and trial commenced in Windsor Superior Court during the Fall of 1994. In November 1994, plaintiff obtained a $3.5 million jury verdict against VEC and VEG&T on defendant's behalf.

In December 1994, plaintiff and defendant reached an agreement regarding fees that gave plaintiff one-third of the net recovery, with an extra one percent for post-trial motion work and an additional three percent for work on appeal. This agreement was memorialized on January 6, 1995 ("the written fee agreement"), and is the foundation of plaintiff's action against defendant. Plaintiff continued to represent defendant in post-trial and appellate matters resulting from the jury verdict.

VEC and VEG&T filed for bankruptcy in April 1996, more than a year after defendant and plaintiff had signed the written fee agreement. No portion of the $3.5 million verdict against VEC and VEG&T had been recovered at the time the utility cooperatives filed for bankruptcy. Plaintiff and defendant agreed to jointly retain Norman Cohen as bankruptcy counsel. By agreement of the parties, plaintiff paid — consistent with the written fee agreement — one-third of

Cohen's fees. Defendant accepted plaintiff's payments, totaling approximately $11,000, for the entire one-year duration of the bankruptcy proceedings.

In April 1997, defendant settled with VEC for $1.3 million under the bankruptcy reorganization plan. Defendant disputed both the percentage and amount of legal fees it was obligated to pay plaintiff, arguing that plaintiff was entitled to sixteen and two-thirds percent of $612,000, because only that portion of the settlement amount actually came out of the work plaintiff had successfully litigated at trial. Plaintiff contended that, according to the terms of the written fee agreement, defendant owed one-third of the entire $1.3 million recovery. Arbitration failed to resolve the dispute, and in August 1997, plaintiff sued to recover its fees and expenses consistent with the written fee agreement.

In October 1998, the court granted plaintiff's summary judgment motion, holding that defendant was estopped from asserting its preexisting duty and duress defenses, and that, in any event, those defenses provided no relief for defendant. The court concluded that the written fee agreement's one-third contingency applied to the full $1.3 million recovered by defendant in the bankruptcy proceeding, rather than the $612,000 that defendant asserted. This appeal followed.

## II. Discussion

We review a grant of summary judgment with the same standard as the trial court. See *In re Margaret Susan P.*, 169 Vt. 252, 257, 733 A.2d 38, 43 (1999). Summary judgment is appropriate only where, taking the allegations of the nonmoving party as true, it is evident that there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Baisley v. Missisquoi Cemetery Ass'n*, 167 Vt. 473, 477, 708 A.2d 924, 926 (1998). In determining whether a genuine issue of material fact exists, we regard as true all allegations of the nonmoving party supported by admissible evidence, and we give the nonmoving party the benefit of all reasonable doubts and inferences. See *Lane v. Town of Grafton*, 166 Vt. 148, 150, 689 A.2d 455, 456 (1997). "It is not the function of the trial court, however, to find facts on a motion for summary judgment, even if the record appears to lean strongly in one direction." *Booska v. Hubbard Ins. Agency, Inc.*, 160 Vt. 305, 309, 627 A.2d 333, 335 (1993).

We do not address the merits of defendant's preexisting duty and duress arguments because we hold that it is estopped from asserting these defenses. "The doctrine of [equitable] estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Dutch Hill Inn, Inc. v. Patten*, 131 Vt. 187, 193, 303 A.2d 811, 815 (1973). The test to determine whether a party is estopped from a claim is simply stated: "'whether, in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct.'" *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 7, 580 A.2d 971, 974 (1990) (quoting *Neverett v. Towne*, 123 Vt. 45, 55, 179 A.2d 583, 590 (1962)). The party asserting estoppel has the burden of establishing four elements: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that its conduct shall be acted upon, or the conduct must be such that the party asserting estoppel has a right to believe it is intended to be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must detrimentally rely on the conduct of the party to be estopped. See

*Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 412 (1982).

Plaintiff has established all four estoppel elements here. First, defendant knew of and signed the written fee agreement, which allocated to plaintiff one-third of the net recovery. The written fee agreement's language is unambiguous, and defendant concedes that it accurately reflects the terms to which the parties agreed in December 1994. Defendant, moreover, does not dispute that plaintiff has established this element.

Second, defendant cannot now complain that it did not intend its conduct in entering into the written fee agreement, nor its subsequent conduct consistent with the agreement, to be relied upon by plaintiff. Plaintiff continued to represent defendant after the written fee agreement was reached in post-trial and appellate litigation under the one-third contingency it had a right to believe was in effect. More than two years after defendant executed the written fee agreement, plaintiff continued to act upon defendant's conduct in the manner which defendant intended. This is most clearly seen by the fact that the bankruptcy counsel fees were shared in the same percentage as the written fee agreement and that defendant accepted such payments from plaintiff without objection during the entire bankruptcy proceedings. "Estoppel can be based on silence where there is an obligation to speak." *Greenmoss*, 155 Vt. at 7, 580 A.2d at 975.*

Third, plaintiff was ignorant of the "true facts"; that is, defendant's intention to pay plaintiff a contingency fee of only sixteen and two-thirds percent of the recovery, rather than the one-third amount in the written fee agreement. "True facts" in estoppel are facts known to the party being estopped but unknown to the party asserting estoppel. See *Ragosta v. Wilder*, 156 Vt. 390, 395, 592 A.2d 367, 370 (1991) ("Equitable estoppel is inapplicable here because there were no facts known to defendant but unknown to plaintiffs."). Simply put, plaintiff relied upon the written fee agreement as governing its recovery percentage, and did not know that defendant planned to pay it anything less than this percentage. In ignorance of the true facts, plaintiff's payment of one-third of the bankruptcy counsel's fee mirrored the percentage of the written fee agreement. We do not

---

* Indeed, defendant's president, Lamson, testified in deposition that the agreement between plaintiff and defendant to share the cost of the bankruptcy counsel in the same percentage as the written fee agreement was intended by defendant to reflect the parties' respective "vested interests" in the recovery of the jury award:

[A]t the time of the bankruptcy, that is, in April 1996, there was discussion as to who should handle the

bankruptcy, what legal services would be rendered. And in the beginning there was suggestion that Gravel and Shea would handle the bankruptcy. I was not interested in having that done, at least not for an extra fee. And [Gravel and Shea attorney] Bob Hemley suggested that Norman Cohen could do the job.

And I think that I said, well, what about the expense? And there was a discussion about vested interest and I can't remember exactly who came up with the theory, Bob claimed it for his own today, I think it may have been mine, but nonetheless, I mentioned the term vested interest and I said we all have a vested interest in the case as it presently stands. We would all be due a percentage if we get paid and we should probably account for the vested interest that we have. And not wanting to create discord on the issue, I indirectly acknowledged that the vested interest which Gravel and Shea had was the thirty-four percent as expressed in the . . . January 6th, 1995, agreement.

accept defendant's attempt on appeal to characterize the "true facts" issue as whether payment of the bankruptcy fee was in substitution for plaintiff's alleged obligation to represent defendant in all proceedings necessary to collect a judgment. Lamson's testimony contradicts this assertion:

> Plaintiff's Counsel: Do you recall telling Bob Hemley that you did not expect Gravel and Shea to represent White Current in the bankruptcy?
>
> Lamson: Yes.
>
> . . . .
>
> Q: What is the substance of that conversation? Could you provide us with that, please?
>
> A: I think Bob said something to the effect that, you can't reasonably expect us to represent you in bankruptcy for the same fee. And I said, no, I acknowledge that bankruptcy is a new ball game and that I wouldn't try to stick you with that.

Fourth, plaintiff detrimentally relied upon defendant's conduct in executing the written fee agreement and its post-agreement conduct consistent with the agreement. Plaintiff's post-trial and appellate work on defendant's behalf and its payment of the bankruptcy counsel's fee in the same one-third percentage plaintiff reasonably believed itself to be entitled to under the written fee agreement were clearly to its detriment when, in 1997, the true facts of defendant's position on the legal fees became apparent.

Based on its conduct, defendant is estopped from now attempting to avoid the contractual obligation of the written fee agreement. To allow defendant to do otherwise would violate the purpose of the doctrine. We hold that conscience and duty of honest dealing denies defendant the right to repudiate the consequences of its representations or conduct here. See *Greenmoss,* 155 Vt. at 7, 580 A.2d at 974. Therefore, the superior court did not err in granting plaintiff's summary judgment motion on the grounds that defendant was estopped from asserting its pre-existing duty and duress defenses.

Finally, we also reject defendant's assertion that, even if it is assumed that plaintiff has sustained its burden on the issue of estoppel, the court erred in finding that no material fact remains in dispute as to the amount of the recovery subject to the contingency fee. Defendant argues that only a portion of the $1.3 million bankruptcy settlement — $612,000 — was attributable to plaintiff's successful litigation work on defendant's behalf. The court characterized defendant's attribution theory as "a sham." Whatever the merits of the characterization, the affidavits of VEC's attorney and the bankruptcy trustee confirm that the entire $1.3 million paid to defendant in the bankruptcy settlement was to satisfy the $3.5 million jury verdict obtained by plaintiff on behalf of defendant. Moreover, both affiants stated that the attribution plan, which defendant now asserts to establish its argument, was solely Lamson's idea and had no bearing on the settlement result. Notwithstanding defendant's creative arguments to the contrary, our review of the record supports the conclusion that no genuine issue of material fact exists as to the amount to which the contingency fee applies. See V.R.C.P. 56; *Samplid Enters., Inc. v. First Vermont Bank,* 165 Vt. 22, 25, 676 A.2d 774, 776 (1996) ("In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. Allegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact.") (citations omitted).

*Affirmed.*