569 S.E.2d 412

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Belinda S. MORTON, a Member of the West Virginia State Bar, Respondent.**

No. 27051.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 27, 2002.

Decided: May 2, 2002.

Dissenting Opinion of Chief Justice Davis May 8, 2002.

Concurring Opinion of Justice Starcher June 28, 2002.

Lawrence J. Lewis, Office of Disciplinary Counsel, Charleston, for the Complainant.

Travers R. Harrington, Fayetteville, for the Respondent.

PER CURIAM:

This is a lawyer disciplinary proceeding brought by the Lawyer Disciplinary Board (hereinafter "Board") against Ms. Belinda S. Morton (hereinafter "Ms. Morton"), a member of the West Virginia State Bar. A Hearing Panel Subcommittee (hereinafter "Hearing Panel") found that Ms. Morton had violated Rule 1.5(a)(1) of the Rules of Professional Conduct by obtaining a fee of $1,500 from medical payments obtained on behalf of her client, Mr. David E. Willis (hereinafter "Mr. Willis"). The Hearing Panel recommends that Ms. Morton be publicly reprimanded, ordered to repay the client $1,500, and pay the costs of this proceeding. Based upon thorough consideration of this matter, we reject the recommendation of the Hearing Panel and dismiss the charge against Ms. Morton.

## I. Facts and Procedural History

On October 26, 1995, Mr. Willis was a passenger in an automobile that collided with a tractor trailer owned by H & W Trucking Company and operated by Mr. Donald F. Reed.[1] Mr. Willis sustained injuries as a result of the accident. On October 30, 1995, Mr. Willis retained Ms. Morton to represent him in a legal action against the trucking company and its driver, Mr. Reed.[2] Under the terms of the contingency contract be-

---

1. The automobile in which Mr. Willis was riding was driven by Mr. Willis' wife, Dorothy Willis. Mr. Willis' son-in-law, Mr. Jimmy Ranson, was also a passenger in the vehicle. It appears that all three occupants sustained injuries in the accident.

2. Ms. Morton was also retained by Mrs. Willis and Mr. Ranson. While the Hearing Panel commented that a potential conflict of interest existed among the passengers and the driver, the Hearing Panel did not address that matter since it was not included in the allegations against Ms. Morton.

tween Ms. Morton and Mr. Willis, Ms. Morton was to receive thirty percent of all monies recovered from any source prior to filing a lawsuit.[3]

In the course of representation of Mr. Willis, Ms. Morton asserts that she prepared and reviewed the contract of representation and explained its terms to Mr. Willis. She also explains that she issued an engagement letter including memorialization of the representation and advice to Mr. Willis concerning maintaining medical bills and the need to avoid contacts and discussion concerning the accident. Ms. Morton's other actions included correspondence with United States Fidelity and Guarantee Company in an effort to place them on notice of the accident and her representation of Mr. Willis. Ms. Morton also corresponded with medical doctors, Dr. Anwar and Dr. Kominsky, concerning her representation of Mr. Willis and his legal claims. Ms. Morton also explained that she corresponded with State Farm Insurance Company adjuster Elaine Durham, in an effort to prevent State Farm from obtaining an overly broad medical authorization. Ms. Morton also asserts that she conducted legal research and investigation regarding Mr. Willis' claims and conducted several phone calls with various State Farm adjustors regarding Mr. Willis' case. Ms. Morton also prepared for and attended interviews with United States Fidelity and Guarantee claims personnel. Ms. Morton maintains that her representation of Mr. Willis entailed at least forty hours of legal work, including interviews with the client and insurance personnel and review of numerous documents.[4]

During the course of representation, Ms. Morton contacted State Farm, the insurer of the automobile in which Mr. Willis was a passenger at the time of the accident, and asked State Farm to add her name to all medical payment checks issued on behalf of Mr. Willis and to forward the checks to her office. The medical payment checks totaled $5,000, and Ms. Morton retained thirty percent of that amount, $1,500, as her fee. Ms. Morton's representation of Mr. Willis was terminated subsequent to Mr. Willis' inability to pay a $500 deposit toward costs and expenses as requested by Ms. Morton on September 11, 1996.

Mr. Willis filed an ethics complaint against Ms. Morton on May 15, 1997, contending that her retention of $1,500 of the $5,000 in medical payments obtained for Mr. Willis was excessive. An Investigative Panel thereafter charged Ms. Morton with obtaining an excessive fee in violation of Rule 1.5(a)(1) of the Rules of Professional Conduct.[5] A hearing

3. The retainer contract provided as follows:

> [C]lient desires to employ attorney to institute and prosecute a claim or suit against Donald F. Reed and H & W Trucking Co. Inc., and such other persons, firms, associations, political bodies, governmental units or corporations as attorney, in their [sic] sole discretion, deems desirable or necessary.

Further, the contract provided:

> Client employs attorney to represent him and, if necessary, to institute and prosecute suit and, as compensation for legal services, client agrees to assign unto attorney thirty percent (30%) before suit is filed and forty percent (40%) if a lawsuit is filed of all monies and things of any value recovered in said claim by a compromise, settlement or suit.

4. The Hearing Panel examined Ms. Morton's contentions regarding work she performed and concluded that she had not demonstrated that the work was directly related to the attempt to obtain medical payments and that such medical payments would have been offered by State Farm even if Ms. Morton had not been involved in the case. Ms. Morton, in response, contends that the Hearing Panel inappropriately divided her representation of the client into two separate issues, the medical payment component and the other liability issues. Ms. Morton maintains that such division is inappropriate, contrary to the terms of the contingency arrangement, and an unfair method of evaluating the issue of excessiveness of legal fees.

5. Rule 1.5(a) states, in full, as follows:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and results obtained;
> (5) the time limitations imposed by the client or by the circumstances;

was held before the Hearing Panel on June 13, 2001, and the Panel subsequently issued its ruling finding that Ms. Morton had violated Rule 1.5(a)(1) by obtaining a fee "grossly excessive for the services actually performed." W.Va. Rules Prof'l Conduct R. 1.5(a)(1). The Hearing Panel and Board have recommended that this Court publicly reprimand Ms. Morton, order her to repay Mr. Willis $1,500, and pay the costs of this proceeding. Ms. Morton has objected to the determination that she violated Rule 1.5(a)(1) and that sanctions should be imposed upon her.

## II. Standard of Review

■ This Court set out the standard of review of lawyer disciplinary proceedings in syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

■ We have also consistently held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985).

## III. Discussion

■ With specific reference to this Court's responsibility to review the reasonableness of fees, we observed as follows in *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986):

> Contracts for contingent fees, generally having a greater potential for overreaching of clients than a fixed-fee contract, are closely scrutinized by the courts where there is a question as to their reasonableness. This close scrutiny arises from the duty of the courts to guard against the collection of a clearly excessive fee, thereby fulfilling the primary purpose of attorney-disciplinary proceedings, specifically, protecting the public and maintaining the integrity of the legal profession.

177 W.Va. at 363, 352 S.E.2d at 114 (citations omitted).[6] In syllabus point three of *Tatterson*, this Court held that "[i]n the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a 'clearly excessive fee' within the meaning of [Rule 1.5(a) of the Rules of Professional Conduct]." 177 W.Va. at 357, 352 S.E.2d at 108. In syllabus point two of *Tatterson*, this Court further held:

> The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. Pt. 4, in part, *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986).

(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

**6.** In *Kopelman and Assocs., L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996), this Court observed that "courts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client." *Id.* at 496 n. 7, 473 S.E.2d at 917 n. 7. In determining whether a contingent fee contract is reasonable or excessive, this Court has applied the following analysis:

If an attorney's fee is grossly disproportionate to the services rendered and is charged to a client who lacks full information about all of the relevant circumstances, the fee is "clearly excessive" within the meaning of [Rule 1.5 of the Rules of Professional Conduct], even though the client has consented to such fee. The burden of proof is upon the attorney to show the reasonableness and fairness of the contract for the attorney's fee.

*Id.* at 377, 352 S.E.2d at 108.

In the case sub judice, the Board contends that this Court's decision in *Tatterson* supports its position that Ms. Morton obtained an excessive fee and that her fee was grossly disproportionate to the services she rendered. In *Tatterson*, however, the attorney had entered into a contingency fee agreement with an elderly blind woman in a matter concerning the recovery of life insurance proceeds for the suicide death of the woman's son. The amount of the life insurance proceeds was $61,000. After the insurance company paid the full amount of the insurance proceeds, the attorney deducted his contingency fee of thirty-three percent. An ethics complaint was subsequently filed against the attorney, charging him with obtaining an excessive fee, misrepresenting the degree of difficulty in obtaining the life insurance proceeds, and engaging in unethical conduct while a disciplinary proceeding was pending against him.

This Court determined in *Tatterson* that the evidence supported the charges against the attorney, observing that the attorney did nothing more than assist the woman in filling out forms to obtain the insurance proceeds. We addressed the matter as follows:

Courts generally have insisted that a contingent fee be truly contingent. The typically elevated contingent fee reflecting the risk to the attorney of receiving no fee will usually be permitted only if the representation indeed involves a significant degree of risk. The clearest case where there would be an absence of real risk would be a case in which an attorney attempts to collect from a client a supposedly contingent fee for obtaining insurance proceeds

for a client when there is no indication that the insurer will resist the claim.

*Tatterson,* 177 W.Va. at 363, 352 S.E.2d at 113–14.

Similarly, this Court has reasoned that "a contingent fee is clearly excessive if the skill and labor required of the lawyer are grossly disproportionate to the fee." *Committee on Legal Ethics v. Gallaher,* 180 W.Va. 332, 335, 376 S.E.2d 346, 349 (1988) (citations omitted). In *Gallaher,* a lawyer disciplinary proceeding was brought against an attorney who allegedly obtained an excessive fee from a client. The attorney's client was an elderly woman who sustained injuries while a passenger in a car that was involved in an accident. The woman sustained medical bills in excess of $2,300. The insurance company offered the woman only $726.65. The offer was rejected, and the woman retained counsel *solely* for the purpose of recovering medical payments. The attorney was able to settle the case for $4,500. The attorney charged a fee of fifty percent of the settlement and, therefore, retained $2,250. Lawyer disciplinary proceedings were brought against the attorney as a result of the alleged excessiveness of the fee, and this Court concluded that a fee of fifty percent was indeed excessive and grossly disproportionate to the services rendered. Consequently, this Court reprimanded the attorney and ordered the attorney to return $750 to the client. Even in those circumstances, this Court approved, in effect, a contingent fee of $1,500, constituting thirty-three and one-third percent of the total recovery.

We are not persuaded that this Court's prior decisions support the proposition that Ms. Morton charged an excessive fee and that the fee was grossly disproportionate to the services rendered. In contrast to the actions of the attorneys in *Tatterson* and *Gallaher,* Ms. Morton was actively engaged in representing her client in all aspects of his potential claims for compensation arising from his collision on October 26, 1995, only one aspect of which was the recovery of medical payments under the State Farm insurance policy.

We are similarly unpersuaded by opinions from other jurisdictions cited by the Board in

support of its position. In *In the Matter of Hausen*, 108 A.D.2d 206, 488 N.Y.S.2d 742 (1985), the excessive fee was obtained after the attorney received a contingent fee for assisting a client in the recovery of no-fault insurance medical payments, despite an express statutory preclusion of such a fee arrangement. *Hausen*, therefore, does not provide an analogous situation, since the case sub judice does not involve a contingency arrangement expressly precluded by statute. Similarly, we are unpersuaded by *Attorney Grievance Commission v. Kemp*, 303 Md. 664, 496 A.2d 672 (1985), cited by the Board. In that case, the attorney had obtained a contingent fee from medical payments recovered for the client. The court in *Kemp* appears to have adopted a per se rule that prohibits attorneys from receiving a contingent fee for medical payments recovered on behalf of a client. The court explained as follows: "Petitioner essentially argues that because the services required in filling out a routine, undisputed Med. Pay claim are perfunctory in nature, contingent fees represent an improper measure of professional compensation. We agree." 496 A.2d at 677–78. This Court has not adopted such a rule, and, in fact, we have tacitly approved such arrangements. *See Bass v. Coltelli–Rose*, 207 W.Va. 730, 536 S.E.2d 494 (2000) (reversing summary judgment for client on issue of whether the attorney/client contract permitted recovery of a contingent fee contingent fees from recovery of medical payments). Thus, while *Bass* presented an opportunity for this Court to prohibit contingency fee agreements that included medical payments and address the issue of whether such fees were reasonable and ethical, this Court declined to do so.

■ The contractual language memorializing the attorney/client relationship in this case, as quoted above, is not ambiguous. The scope of the agreement is clear in providing for full legal representation to recover "of all monies and things of any value" from anyone Ms. Morton deemed "desirable or necessary" to pursue. This language did not limit Ms. Morton's role to recovering medical payments for Mr. Willis, and the contract did not preclude Ms. Morton from acting on behalf of Mr. Willis in obtaining medical payments. Ms. Morton contracted to provide legal services that empowered her to pursue every source of and right to recovery to which Mr. Willis may have been entitled, as it pertained to his alleged tortious injury.

In her legal representation in this case, Ms. Morton has itemized approximately forty hours of work performed on behalf of Mr. Willis prior to the termination of the legal representation. As compensation for forty hours of work, Ms. Morton obtained $1,500 as a contingent fee. This translates to roughly $37.50 for each hour of work performed by Ms. Morton. We fail to see how this fee could be characterized as excessive.

## IV. Conclusion

■ Having examined the language of the agreement between the attorney and client to ascertain the scope of the work to be performed by the attorney, and having evaluated the attorney's explanation of all work performed that may fairly be said to have arisen from the agreement, we find that the fee received by Ms. Morton was not grossly disproportionate to the services rendered and was not excessive. This Court believes that in matters involving professional compensation it is incumbent upon the Lawyer Disciplinary Board to fairly examine all of the relevant circumstances of a lawyer's engagement and the professional services in fact rendered when considering whether compensation is excessive, and that focusing on a single component of that compensation without consideration of the entire engagement and services rendered may lead, as it has here, to an unjust conclusion of impropriety.

Based upon the foregoing, this Court concludes that the evidence was insufficient to support the Board's contention that Ms. Morton violated Rule 1.5(a)(1) of the Rules of Professional Conduct. Consequently, this Court hereby orders that the charge against Ms. Morton be dismissed.

Charge dismissed.

Justice STARCHER concurs and files a concurring opinion.

Chief Justice DAVIS dissents and files dissenting opinion joined by Justice MAYNARD.

STARCHER, Justice, concurring:

(Filed June 28, 2002)

The majority opinion in this case simply recognizes that a lawyer who ends up accepting a $1,500.00 fee for legal services that translates to approximately $37.50 per hour for her work is neither unethical, nor should she be disciplined for her actions.

The dissent, regardless of its intent, is an attack on a minority lawyer who provides legal services to many people in her community that might otherwise go unrepresented. The majority opinion, in no way, "undermines the integrity of the legal profession," nor does it involve a case in which the respondent might otherwise expect a substantial contingency fee.

This case has no similarities to *Committee on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986), in which a lawyer took 33% of $61,000.00 of insurance death benefits. Nor does it have any relationship to the "big cases" taken by plaintiffs' attorneys in which there is the prospect of a very large contingency fee, accompanied with the "collection" of medical insurance benefits. This case is simple—a lawyer ended up charging a mere $1,500.00 for 40 hours of legal services. The argument advanced in the dissent might be well taken if the respondent had taken a "fee [that was] clearly excessive."

DAVIS, Chief Justice, dissenting:

(Filed May 8, 2002)

In this lawyer disciplinary proceeding, the Hearing Panel Subcommittee found that Belinda S. Morton (hereinafter referred to as "Ms. Morton") violated Rule 1.5(a)(1) of the Rules of Professional Conduct by obtaining a fee of $1,500.00 from medical payments made to her client, David E. Willis, by his own insurance carrier. The Hearing Panel recommended that Ms. Morton be publicly reprimanded, ordered to repay the client $1,500.00, and ordered to pay the costs of this proceeding. The majority opinion has rejected the Hearing Panel's recommendation and dismissed the charge against Ms. Morton. For the reasons set out below, I dissent.

### I. Ms. Morton was not Retained to Receive Undisputed Medical Payments from Her Client's Insurer.

At the outset, let me clarify that my dissent should in no way be viewed as a criticism of contingent fees. Rather, my dispute with the majority opinion is that it permits attorneys in this state to collect fees from their clients when they have performed absolutely no services on behalf of those clients.

The record in this case is quite clear. Mr. Willis retained Ms. Morton to recover compensation from the party who injured him in an automobile accident, that is, H & W Trucking Company and its driver, Donald F. Reed. Nevertheless, the majority opinion contends that the contract entered into between Mr. Willis and Ms. Morton permitted Ms. Morton to retain a percentage of the medical payments remitted without dispute by Mr. Willis' own insurer. I find no provision in the contract between Ms. Morton and Mr. Willis permitting Ms. Morton to keep any portion of undisputed medical payments made to Mr. Willis. On the contrary, the contract clearly demonstrates that Ms. Morton was retained for *the sole purpose of seeking compensation from the tortfeasor*. She was not hired to merely receive checks from the insurance company on behalf of Mr. Willis, and she should not be compensated for performing such an unnecessary service.

### II. The Fee Obtained by Ms. Morton was Clearly Excessive.

State Farm *never disputed* Mr. Willis' entitlement to medical payments under his own insurance policy. In fact, State Farm never sought to evade its payments or even contest the legitimacy of the injuries involved. In other words, absolutely no legal services were necessary to obtain the med-pay portion of Mr. Willis' insurance. Thus, to "earn" the $1,500.00 contingency fee the majority has allowed in this case, Ms. Morton performed only one act. She telephoned State Farm and instructed them to add her name to all medical payment checks issued on be-

half of Mr. Willis and to forward the checks to her office. The net result of Ms. Morton's conduct was to cause Mr. Willis to be indebted to his medical providers for the sum of $1,500.00—the amount of med-pay benefits Ms. Morton retained.

Mr. Willis was understandably upset at having to pay his medical providers $1,500. He had paid insurance premiums that entitled him to have his medical bills paid in full, and State Farm had unequivocally provided him with the money. However, as a result Ms. Morton's fee, Mr. Willis incurred debt to his medical providers that would otherwise have been paid by this insurance.

Mr. Willis filed an ethical complaint against Ms. Morton. An Investigative Panel thereafter charged Ms. Morton with obtaining an excessive fee in violation of Rule 1.5(a)(1) of the Rules of Professional Conduct.[1] The Hearing Panel eventually issued its recommended decision finding that Ms. Morton violated Rule 1.5(a)(1) by obtaining a fee "grossly excessive for the services actually performed." The Hearing Panel's finding was correct.

The resolution of this case should have been guided by this Court's decision in *Committee on Legal Ethics of West Virginia State Bar v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986).[2] The attorney in *Tatterson* entered into a contingency fee agreement, with an elderly blind woman, that involved recovery of life insurance proceeds. The life insurance proceeds were for the suicide death of the woman's son. The amount of the life insurance proceeds was $61,000.00. After the insurance company paid out the full amount of the insurance proceeds to the woman, the attorney deducted his contingency fee of 33%. An ethical complaint was subsequently filed against the attorney charging him with obtaining an excessive fee, misrepresenting the degree of difficulty of obtaining the life insurance proceeds, and engaging in unethical conduct

while a disciplinary proceeding was pending against him. This Court found the evidence supported the charges against the attorney, who had done nothing more than assist the woman in filling out forms to obtain the insurance proceeds. In *Tatterson*, we explained:

> Courts generally have insisted that a contingent fee be truly contingent. The typically elevated contingent fee reflecting the risk to the attorney of receiving no fee will usually be permitted only if the representation indeed involves a significant degree of risk. The clearest case where there would be an absence of real risk would be a case in which an attorney attempts to collect from a client a supposedly contingent fee for obtaining insurance proceeds for a client when there is no indication that the insurer will resist the claim. In the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a "clearly excessive fee" within the meaning of [the rules].

*Tatterson*, 177 W.Va. at 363, 352 S.E.2d at 113–114 (citations omitted). Plainly, the instant case is a perfect example of the type of contingent fee misconduct that was condemned in *Tatterson*.

Several decisions from other jurisdictions similarly conclude that it is improper for attorneys to demand fees for collecting undisputed medical payments from their clients' insurers. For example, in *Attorney Grievance Commission v. Kemp*, 303 Md. 664, 496 A.2d 672 (1985), two attorneys were charged with obtaining an excessive fee from their client. The attorneys represented the client as a result of injuries she received in an automobile accident. The attorneys had a contingency contract agreement with the client. During the course of prosecuting the tort claim, the attorneys obtained one-third of the medical payments the client received from her insurer. An ethical complaint was

---

**1.** Rule 1.5(a)(1) states as follows:
   (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and

skill requisite to perform the legal service properly[.]

**2.** *Tatterson* was a disciplinary proceeding where a recommendation was made that the attorney's license be annulled.

eventually filed against both attorneys for retaining one-third of the client's medical payments. The Maryland Court of Appeals found that the fee was excessive and issued a reprimand against both attorneys. The court reasoned as follows:

[I]t is manifest that Med. Pay is not dependent, for the most part, upon the skills of a lawyer. The risk of uncertainty of recovery is, therefore, low indeed. Under these circumstances, it would be the rare case where an attorney could properly resort to a contingency fee for the payment of Med. Pay. As we see it, the better course would be for lawyers to supply the insurer with the requisite Med. Pay documentation as an accommodation to the client or subject to a minimal charge.

... In our view, because there was no dispute as to payment under Med. Pay and because the insurer made payment upon receipt of the completed benefit form and medical report, the fee charged by respondents was clearly excessive and thus in violation of DR 2–106(A).

*Kemp*, 496 A.2d at 679.

The Supreme Court of Illinois' decision in *In re Teichner*, 104 Ill.2d 150, 83 Ill.Dec. 552, 470 N.E.2d 972, (1984) also supports this position. *Teichner* was a lawyer disciplinary matter wherein the attorney was charged with obtaining an excessive fee.[3] The attorney and his client had entered into a contingency fee agreement for the recovery of death benefits from the client's deceased husband's insurer, and for prosecuting a related products liability claim. The agreement permitted the attorney to receive one-fourth of the amount recovered by *settlement or judgment* from the death benefits; and one-third of the amount recovered in exchange for representation on the products liability claim. Payment of the death benefits was never an issue of dispute. Nevertheless, when the insurer paid over the sum of $27,598.71, the attorney retained one-fourth of the proceeds. An ethical complaint was later filed against the attorney. A disciplinary hearing panel found the fee obtained from the death benefits was excessive. The Supreme Court of

Illinois agreed with the hearing panel, and commented:

There is greater merit, in our opinion, in the hearing panel's position that no fee was due unless recovery occurred pursuant to a "settlement" or "judgment." Obviously there was no judgment, and a settlement normally presupposes a dispute or disagreement. Here, the insurer did not question complainant's right to the insurance proceeds. Its payment was routine, and, as the hearing panel found, complainant would have received the same amount at the same time had she never seen respondent. Given the fact that the unquestioned, routine payment here does not come within the normal definitions of a settlement, and did not result from a judgment, ... we cannot disagree with the panel's finding that the terms of the contract do not entitle respondent to a fee.

*Teichner*, 83 Ill.Dec. 552, 470 N.E.2d at 977 (internal citations omitted).[4]

In the instant case, there has been *no indication* that State Farm opposed the medical payments on behalf of Mr. Willis. Thus, there was no "risk" involved that would justify Ms. Morton obtaining a contingency fee for monies which she had absolutely no role in recovering for Mr. Willis. Clearly, under *Tatterson, Kemp,* and *Teichner*, Ms. Morton was not entitled to obtain $1,500.00 from Mr. Willis' medical payment.

### III.  Time Spent Pursuing a Tortfeasor does not Justify Attorney's Fees for Collecting Undisputed Medical Payments.

In order to justify Ms. Morton's attorney's fees in this case, the majority opinion had to combine "apples and oranges." There was no dispute in this proceeding that Ms. Morton put in roughly forty hours working on Mr. Willis' claim against the tortfeasor. Because she was retained to litigate a case against the tortfeasor, I do not oppose Ms. Morton receiving monies, based upon her contingency fee contract, for this work. In-

---

3.  There was also a charge of converting and commingling client funds.

4.  The attorney was disbarred.

deed, our court, along with the majority of other courts, has consistently upheld contingency fee contracts. *See Kopelman and Assocs., L.C. v. Collins,* 196 W.Va. 489, 496 n. 7, 473 S.E.2d 910, 917 n. 7 (1996) ("[C]ourts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client."). *Accord Johnson v. Guardianship of Ratcliff,* 72 Ark.App. 85, 34 S.W.3d 749 (2000); *Brunswick v. Safeco Ins. Co.,* 48 Conn.App. 699, 711 A.2d 1202 (1998); *Arabia v. Siedlecki,* 789 So.2d 380 (Fla.Dist. Ct.App.2001); *Sosebee v. McCrimmon,* 228 Ga.App. 705, 492 S.E.2d 584 (1997); *Lewsader v. Wal–Mart Stores, Inc.,* 296 Ill.App.3d 169, 230 Ill.Dec. 560, 694 N.E.2d 191 (1998); *Revere Transducers, Inc. v. Deere & Co.,* 637 N.W.2d 189 (Iowa 2001); *Baugh v. Baugh,* 25 Kan.App.2d 871, 973 P.2d 202 (1999); *Francis v. Hotard,* 798 So.2d 982 (La.Ct.App. 2001); *Brown & Sturm v. Frederick Road Ltd. P'ship,* 137 Md.App. 150, 768 A.2d 62 (Spec.App.2001); *Cambridge Trust Co. v. Hanify & King Prof'l Corp.,* 430 Mass. 472, 721 N.E.2d 1 (1999); *Goldstein & Price v. Tonkin & Mondl,* 974 S.W.2d 543 (Mo.Ct. App.1998); *Lozano v. GTE Lenkurt, Inc.,* 122 N.M. 103, 920 P.2d 1057 (Ct.App.1996); *Speken v. Columbia Presbyterian Med. Ctr.,* 284 A.D.2d 229, 726 N.Y.S.2d 652 (2001); *Robinson, Bradshaw & Hinson, P.A. v. Smith,* 139 N.C.App. 1, 532 S.E.2d 815 (2000); *Ryan v. Terra Vista Estates, Inc.,* 102 Ohio App.3d 474, 657 N.E.2d 522 (1995) *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.,* 35 S.W.3d 658 (Tex.Ct.App.–Hous.1 Dist.2000); *Gravel & Shea v. White Current Corp.,* 170 Vt. 628, 752 A.2d 19 (2000). However, a contingent fee should be collected only for work contemplated in the contingent fee contract. The majority opinion in this case has determined that the forty hours Ms. Morton worked on Mr. Willis' claim against the tortfeasor should be used to justify her retention of the $1,500 in undisputed medical payments. This commingling is unjustified and unsupportable. The majority opinion cited to no prior decision of this Court, nor any court in the country, that has combined an attorney's legitimate work hours under a contingency fee contract with the improper retention of a client's medical payments.

## IV. The Majority Opinion Undermines the Integrity of the Legal Profession.

The greatest problem I have with the majority opinion is the long-term negative impact this decision will have on the legal profession in this State, and on the people served by our legal profession. Prior to the instant case, the law espoused by this Court has been that "a contingent fee is clearly excessive if the skill and labor required of the lawyer are grossly disproportionate to the fee." *Committee on Legal Ethics of the West Virginia State Bar v. Gallaher,* 180 W.Va. 332, 335, 376 S.E.2d 346, 349 (1988) (citations omitted). No skill or labor was required for Ms. Morton to obtain medical payments from State Farm. Ms. Morton simply picked up her telephone and said, in effect, "send me the money." In *Tatterson,* this Court affirmed that it was "the duty of the courts to guard against the collection of a clearly excessive fee, thereby ... protecting the public and maintaining the integrity of the legal profession." 177 W.Va. at 363, 352 S.E.2d at 114 (citations omitted). *See also In re Teichner,* 104 Ill.2d 150, 83 Ill.Dec. 552, 470 N.E.2d 972, 977 ("The purpose of this court's attorney-disciplinary process is to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach.") In rendering the decision in the instant case, the majority has abandoned the duty of this Court to protect the public and maintain the integrity of the legal profession.

In my concurring and dissenting opinion in *Bass v. Coltelli–Rose,*[5] I addressed the pro-

---

5. The decision in *Bass* involved a lawsuit that was filed against an attorney by a client. The client sought to recover a contingent fee that the attorney obtained from the client's automobile insurance medical payments. The circuit court granted summary judgment in favor of the client. On appeal, this Court addressed the sole issue of whether the contract between the attorney and client permitted recovery of a contingent fee from the client's medical payments. We found that the wording of the contract permitted such recovery and, therefore, reversed the summary judgment order.

priety of a contingency fee arrangement for medical payments as follows:

It is most unusual for lawyers to seek fees from medical payments. In fact, the majority of the plaintiffs' bar does not take a contingency fee on medical payment recoveries obtained from their client's own insurer.

*Bass,* 207 W.Va. 730, 735 n. 3, 536 S.E.2d 494, 499 n. 3 (2000) (per curiam) (Davis, J., concurring and dissenting). The proprietary concerns I expressed in *Bass* were expanded upon in the dissenting opinion of Justice Scott as follows:

Unfortunately, the majority deemed it unnecessary to engage in discussion of the reasonableness or excessiveness of the fee charged... It is clear to me that these fees should have been found to be excessive. Basically, [the lawyer] charged and received an exorbitant amount of attorney's fees for collecting medical payments coverage under a contract which was not in dispute and which was paid by the insurer without major controversy.

Not only is the contingent fee in this case unreasonable, it is potentially unethical as well. Rule 1.5 of the West Virginia Rules of Professional Conduct, which governs attorney's fees in general, dictates what elements comprise a reasonable fee for the provision of professional legal services[.]

....

Under the[ ] rules of professional conduct, as well as the standards enunciated by this Court interpreting those rules, the contingent fee charged by [the lawyer] is excessive, unreasonable, and, at a minimum, raises the question that said fee might be unethical as well. Not only was the time, labor, legal skills and experience put forth by [the lawyer] to receive the medical payment proceeds de minimis, at best; but, the fee was simply not based upon any contingent event.

*Bass,* 207 W.Va. at 736–738, 536 S.E.2d at 500–502 (Scott, J., dissenting).

Neither the public nor the legal profession is served by allowing lawyers to collect a percentage of *noncontested medical payments* from their client's insurer. Under the majority opinion, in situations where a client's insurer does not dispute coverage, every lawyer in this state may now pick up the telephone and say to their client's insurer, "send me the money." This is wrong.

In this case, Ms. Morton received $1,500 for simply saying "send me the money." What happens when a client's medical bills are $100,000 or more, and the client's insurer intends to pay the bills without dispute? The client will be saddled with an outstanding medical debt that, but for the opinion in this case, would have been paid in full by the client's insurer. The public should not be subjected to such overreaching by the legal profession. *See Anderson v. Kenelly,* 37 Colo.App. 217, 547 P.2d 260, 261 (1976) ("Caveat emptor is not a legal maxim attributable to the attorney-client relationship."). Nor should the legal profession be allowed to conduct itself on such a low ethical level permitting this type of client abuse.

For the reasons stated, I dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.